401 So.2d 1224 (1981)
Walter J. BATISTE, Sr., et al., Plaintiffs and Appellants,
v.
IBERIA PARISH SCHOOL BOARD et al., Defendants and Appellees.
No. 8149.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
Writ Denied September 18, 1981.
*1225 Mouton, Roy, Carmouche, Bivens & Kraft, Ralph E. Kraft, Lafayette, for plaintiff and appellant.
John W. Porterfield, Jeanerette, for defendant and appellee-appellant.
Voorhies & Labbe, D. Mark Bienvenu, Lafayette, White & Pitre, Marion O. White, Opelousas, Knowles M. Tucker and J. Phil Haney, New Iberia, for defendants and appellees.
Before CULPEPPER, DOMENGEAUX and LABORDE, JJ.
CULPEPPER, Judge.
Walter J. Batiste, Sr., individually and as administrator of the estate of Walter Batiste, Jr., seeks damages for personal injuries sustained by his minor son while a student at Canal Street Elementary School in Jeanerette, Louisiana. Plaintiff contends *1226 that during noon recess at school, the young Batiste, then 11 years old, was stabbed in the eye with a ballpoint pen by a fellow student, resulting in the loss of eyesight in the right eye. Named defendants are the Iberia Parish School Board, Horace Mann Insurance Company, the School Board's insurer, Irvin Moceri, the school's principal, and Audrey Minor and Harold Hayes, teachers at the school. Also named defendants are Clifford Marks and Linda Coleman, as administrators of the estate of Warner Coleman, Henry Jackson, the father of Henry Jackson, Jr., and Peter Jean Louis and Jeanette Jean Louis, the parents of Peter Jean Louis. Plaintiff contends Warner Coleman, Henry Jackson, Jr. and Peter Jean Louis held his son and beat him and stabbed him in the eye.
By supplemental and amending petition, Eleanor Jackson Batiste, the mother of Walter Batiste, Jr., was substituted as the proper party plaintiff following a judgment of absolute divorce from Walter Batiste, Sr. wherein she obtained custody of the minor.
During the course of the trial, the district court granted a motion for directed verdict in favor of Harold Hayes and dismissed him from the lawsuit. Judgment was rendered in favor of plaintiff and against Clifford Marks, Linda Coleman, Henry Jackson, Calvin Louis and Jeanette Louis. Plaintiff's claim against the Iberia Parish School Board, Horace Mann Insurance Company, Irvin Moceri and Audrey Minor were denied. Plaintiff appealed. Clifford Marks, Linda Coleman, Calvin Louis and Jeanette Louis also have appealed.
The issues presented are (1) whether the Iberia Parish School Board and/or its employees, Irvin Moceri and Audrey Minor, are liable to plaintiff, (2) whether Clifford Marks, Linda Coleman, Henry Jackson, Calvin Louis and Jeanette Louis are liable, (3) whether the trial judge improperly considered the defendants' inability to pay in assessing damages without supporting evidence, and (4) whether the damages awarded by the trial judge were excessive or inadequate?
Several versions of the incident were offered by the participants. According to Walter's testimony, he had just finished lunch and was taking a walk in the playground area when Warner Coleman, a fellow student, came up and struck him on the arm. Two other students, Henry Jackson and Peter Jean Louis, then grabbed Walter by the arm and held him for several minutes while Warner Coleman struck him several times in the chest, stomach and forehead. During this time, Walter attempted unsuccessfully to attract the attention of one of the teachers who was monitoring the playground area that day. He eventually managed to break free from the two boys who were holding him, and he struck Warner. Warner then stooped down and took a Bic ballpoint pen from his sock and stabbed Walter twice in the right eye.
Henry Jackson and Peter Louis testified that at noon recess all four boys were involved in a game in which one would hit the other on the arm or shoulder. This game soon turned into a scuffle between Walter and Warner. Walter was thrown to the ground by Warner and when he got up his eye was bleeding. Both denied ever holding or hitting Walter.
Warner Coleman also testified that the boys were playing a hitting game. He admits hitting Walter while he was being held by Henry and Peter but denies stabbing Walter in the eye. He states that this game lasted for five or ten minutes.
Mr. Irvin Moceri, principal at Canal Street Elementary School, testified that there were approximately 450 students enrolled at the school in November of 1977. On this particular day, grades 4 and 5 and some third grade classes were on their luncheon recess. Mr. Moceri had assigned two teachers, Ms. Audrey Minor and Ms. Glenda Vanduezee, to monitor the noon recess period for that day. He estimated that there were at least 100 students actually out on the playground when the accident occurred, thus the pupil-teacher ratio was roughly 50 to 1. The playground yard comprised an area of about 200 by 250 feet.
*1227 Teachers assigned to supervise the noon recess period were instructed by Mr. Moceri to stay apart and to make continuous rounds of the school building. The halls and restrooms inside the building were also periodically checked. Mr. Moceri stated that it took anywhere from three to five minutes, depending on the circumstances, to complete a round of the assigned area.
He further testified that prior to November 2, 1977, he had observed some of the children engaged in a similar hitting game and that he had asked the on-duty teacher to discourage this type of activity.
Ms. Audrey Minor stated that on this particular day she and Ms. Vanduezee were on opposite sides of the fifth grade building as they were making their rounds. She stated that she had previously seen a similar game between some of the children and told them not to play it. Her account of the incident is as follows:
"Q Have you had occasion to see this type of game or type of activity before November 2, 1977?
A Yes, I seen them playing tag as such.
Q Well, have you had occasion to tell the students that they should not play this type of game?
A If I see where they're getting too rough, yeah.
Q Did you have an occasion on November the 2nd, `77 to tell the students not to play this particular game on that day?
A No, because I didn't notice that they were playing such game, they were such a distance away from me.
Q What distance were they from you, ma'am?
A Say, about 75 or 80 feet away from me.
Q And is it your testimony that on one of your prior rounds or revolutions that you saw these particular youths playing this particular game?
A I wouldn't say I saw those particular youths. I saw a crowd of children.
Q Did you know the students with such familiarity that you could identify those persons from 75 or 80Did you say yards or feet?
A Feet
Q from 75 or 80 feet away on that particular day?
A To know who it was with the crowd around it, no, I couldn't identify it.
Q Approximately how many children did you see when you first came around the corner and made your observation or told the kids to stop it?
A Well, I didn't count them or anything, you know, it was just a crowd, a gang.
* * * * * *
Q What do you recall having seen?
A Well, as I was making my routine check around the building, just as I got around the building, I noticed a crowd of children together and I hollered for them to stop and I ran over there.
Q Did you go to the point where the incident was occurring?
A Well, by that time the kids started walking toward me.
Q So, you did not actually reach the point where the altercation was ongoing?
A Not the distance where they were.
Q Do you know Walter Batiste?
A Yes.
Q Did you know him at that time?
A Not personally.
Q Did you know WalterDid you observe that Walter had suffered some sort of injury to his right eye?
A Yes.
Q What did you observe?
A I noticed something was wrong with his right eye."
Ms. Vanduezee confirmed that she was on the opposite side of the building at the time and had not noticed any disturbance on her previous round.
*1228 The trial judge found that the supervision provided by the school through its principal and teachers was reasonable and adequate under the circumstances, thus the School Board was not liable to plaintiff. The court further found that plaintiff's injury was an unforeseeable occurrence.
Plaintiff contends this unfortunate accident could have been prevented with proper supervision by the principal and teachers at Canal Street Elementary School. He argues that two teachers could not adequately oversee the safety of the number of children present on the playground at that time. He further argues that this type of hitting game had been reprobated and since the hitting game lasted from five to ten minutes, at least one of the teachers should have noticed and put an end to this roughhousing.
The duty of a school board with respect to the safety of its students was well expressed in Prier v. Horace Mann Insurance Company, 351 So.2d 265 (La.App.3rd Cir. 1977) wherein the court stated:
"[1-4] Our jurisprudence is settled that a school board is not the insurer of the lives or safety of children. School teachers charged with the duty of superintending children in the school must exercise reasonable supervision over them, commensurate with the age of the children and the attendant circumstances. A greater degree of care must be exercised if the student is required to use or to come in contact with an inherently dangerous object, or to engage in an activity where it is reasonably foreseeable that an accident or injury may occur. The teacher is not liable in damages unless it is shown that he or she, by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so. It also is essential to recovery that there be proof of negligence in failing to provide the required supervision and proof of a causal connection between that lack of supervision and the accident." (Citations omitted)
We agree with the trial court that plaintiff has failed to show any negligence on the part of Ms. Minor, Ms. Vanduezee or Mr. Moceri. There was absolutely no showing that the two teachers were in any way remiss in carrying out their supervisory duties. We are also in accord with the trial court's finding that the number of teachers used to supervise the noon hour recess was reasonable under the circumstances. Mr. Moceri's own testimony shows that the safety practices used at Canal Street Elementary School were in accordance with policies established by the Iberia Parish School Board.
Even assuming plaintiff has made out a plausible case of negligence against the School Board, he has failed to show a causal connection between any lack of supervision and the accident. The district court found that the altercation was promptly discovered and that immediate action was taken to prevent it. We agree. While it was admitted that such games were discouraged because they could lead to injury, we do not think Warner Coleman's vicious conduct was a foreseeable action which could have been prevented even with increased supervision. In Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App.3rd Cir.1966), a case involving somewhat related facts, the court observed:
"No one can predict what the actions of children of 8 or 9 years of age will be while playing on a schoolground. How could any teacher anticipate a situation where one child, while teasing another child, would be struck in the eye with a stick by a third child? Even if such action could have been anticipated, there is no showing of any likelihood whatsoever that such action could have been prevented by a teacher or supervisor even if said teacher or supervisor was standing right there. As is often the case, accidents such as this, involving school children at play, happen so quickly that unless there was direct supervision of every child (which we recognize as being impossible), the accident can be said to be almost impossible to prevent."
*1229 Accordingly, we affirm that portion of the trial court's judgment in favor of the defendant School Board and its employees and insurer.
We next turn to the liability of the parents of the three children who were involved in the incident which led to Walter's injuries. The trial judge found the evidence established that Warner Coleman stabbed Walter in the eye, and that, as a result of this incident, Walter is now functionally blind in the right eye. We agree with this finding. Thus, under LSA-C.C. 2318 Clifford Marks and Linda Coleman are liable for the tortious act of their minor son.
The trial judge found the parents of the Louis boy and of the Jackson boy are also liable. In written reasons the judge states Batiste was restrained by Louis and Jackson while being struck by Coleman during the "hitting" game. The judge's reasons are not clear as to whether he found Batiste was still being held by Louis and Jackson at the time Coleman stabbed Batiste in the eye. If the trial judge did intend to hold this, he was clearly wrong. There is no evidence that Batiste was still being held by Louis and Jackson when the stabbing occurred. Batiste himself testified, as stated above, that during the "hitting" game he broke loose from Louis and Jackson or that they turned him loose, and that Batiste then struck Coleman and they were fighting with their fists when suddenly Coleman stooped down and took a Bic ballpoint pen from his sock and stabbed Batiste twice in the right eye. Both Louis and Jackson denied ever holding Batiste, but even if they were holding him during the "hitting" game, they gave essentially the same version of the stabbing, i. e., that Batiste and Coleman were fighting and during the fight Batiste was knocked down and when he got up from the ground his eye was bleeding. In Coleman's testimony he admits hitting Batiste during the "hitting" game, while he was being held by Louis and Jackson, but he denies stabbing Batiste in the eye either while he was being held or after. Thus, there is absolutely no evidence that Batiste was being held by Louis and Jackson at the time Coleman stabbed Batiste in the eye. To the contrary, all of the testimony by the participants, including the victim, is that Batiste was not being held by Louis and Jackson at the time of the stabbing.
In their original brief in this Court, counsel for the parents of Louis and Jackson cite Cheatham v. City of New Orleans, 368 So.2d 146 (La.App.4th Cir.1979) as analogous to the present case. In Cheatham, two off-duty policemen in civilian clothes were walking along Bourbon Street in New Orleans when a shoe-shine boy approached and insisted on shining their shoes. An argument and obscenities ensued and one of the policemen began to manhandle the boy. Cheatham, a bystander, intervened in the boy's behalf. Reboul, one of the policemen, started fighting with Cheatham. The other policeman, DeNoux, drew a gun and shot Cheatham, causing his death. A jury held both officers liable for the death of Cheatham. The Court of Appeal reversed as to Reboul on the basis that he could not have reasonably foreseen that his scuffling with Cheatham would lead to DeNoux's bizarre act of fatally shooting an unarmed man.
Apparently after the original briefs were filed in our Court, the Supreme Court, pursuant to the granting of writs, reversed and held Reboul negligent, 378 So.2d 369 (La. 1980). The high court reasoned there was at least sufficient evidence in the record to support a conclusion by the jury that Reboul did the shooting. Furthermore, the court reasoned that even if Reboul did not shoot Cheatham, and the jury so concluded, it was nonetheless within the jury's province to find, and the court could not say the jury was clearly wrong in this, that Reboul was otherwise negligent and that his negligence was a "proximate cause" of Cheatham's death. The court went on to state that Cheatham was a larger man than either Reboul or DeNoux, that Reboul knew his partner was carrying a gun, and he should have "readily foreseen" that if he did engage in a fight with Cheatham, and the fight did not go as he hoped it would, his partner, DeNoux, would do what was necessary to protect him. The Supreme *1230 Court concluded "that when Reboul entered into the fight with Cheatham it was foreseeable, indeed expected, that his partner would intervene on his behalf if it became necessary, and that his partner, having in his possession a gun, might use that gun if he felt it was necessary to protect his partner."
Applying the method of analysis of the Supreme Court in Cheatham to the present case, we note first that here the trial judge was clearly wrong in finding as a fact, if he did so find, that Louis and Jackson were still holding Batiste at the time Coleman stabbed Batiste. Under the facts as we find them, it was not reasonably foreseeable by Louis and Jackson that their engaging in the "hitting" game and holding Batiste while Coleman struck him on the arm and in the stomach would lead to the injury which followed. As described in the record, there were several boys engaged in the game, hitting each other and holding one boy while another hit him. It was a rough game, but Louis and Jackson had no reason to think that Batiste would be stabbed in the eye or otherwise seriously injured. It was only after Louis and Jackson had released Batiste, or he had broken away from them, that Batiste and Coleman started to fight with their fists and this finally resulted in Coleman pulling a Bic ballpoint pen from his sock and stabbing Batiste in the eye twice. Using the analysis by the Supreme Court in Cheatham, we do not find it was reasonably foreseeable by Louis and Jackson that such an injury would result.
Plaintiffs were awarded $60,000 in general damages plus special damages. In its written reasons for judgment, the court stated:
"While no evidence as to the ability of defendant parents to respond to a judgment was introduced, simple observation of them by the court during trial, indicates a somewhat limited ability. Considering this, and in light of Outlaw v. Bituminous Insurance Company, 357 So.2d 1350 (4th Cir.1978) and Walker v. Champion, 288 So.2d 44 (1974), the court feels that an award of $60,000 in general damages to be appropriate."
In Outlaw, the appellate court affirmed an award of $150,000 to a nine year old boy for the loss of an eye. In Walker, the Supreme Court reinstated the trial judge's award of $100,000 to a high school student for loss of one eye.
Plaintiff argues that the trial court erred in considering the defendant's inability to pay without any supporting evidence introduced as to defendant's pecuniary condition.
The inability to pay doctrine, a well established rule in our jurisprudence, states that a defendant in a tort action may present evidence during the trial of the case on its merits to show his inability to pay general damages, and that the trial court may consider that evidence in determining the award of such damages. Landry v. Martin, 353 So.2d 449 (La.App.3rd Cir.1977); Tabb v. Norred, 277 So.2d 223 (La.App.3rd Cir.1973); Rollins v. New York Fire & Marine Underwriters, 225 So.2d 663 (La. App.3rd Cir.1969). Inability to pay need not be alleged as an affirmative defense. Washington v. Anglade, 359 So.2d 1330 (La. App.4th Cir.1978); Williams v. Garner, 267 So.2d 56 (La.App.1st Cir.1972). However, any determination of the defendant's inability to pay must be made on the basis of evidence introduced in the record, rather than on mere observation or judicial notice by the trial judge.
Thus, we must examine the present award of damages to determine whether it represented a clear abuse of the trial judge's much discretion. LSA-C.C. Article 1934(3). The record reflects that as a result of the injury plaintiff lost both the iris and the lens of his right eye. Dr. Roland Sylvester, an ophthalmologist, testified that Walter presently has no vision in his right eye and that he would not regain full vision even with corrective surgery. Dr. Larry Baker, also an ophthalmologist, was of the opinion that Walter's prognosis for regaining useful vision of the injured eye was poor. Both testified that persons who have sight in only one eye also lose depth perception.
*1231 In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), our Supreme Court stated the rules on appellate review of quantum awards as follows:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., supra [304 So.2d 351 (La.1974)]; Bitoun v. Landry, supra [302 So.2d 278 (La.1974)]; Fox v. State Farm Mutual Automobile Ins. Co., supra [288 So.2d 42 (La.1973)]: Walker v. Champion, supra [288 So.2d 44 (La.1973)]. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., supra [294 So.2d 803 (La.1974)]"
The trial judge's erroneous consideration, without evidence, of inability to pay resulted in an award so low as to constitute a clear abuse of discretion. The lowest award which the district court could have reasonably made is $90,000. Accordingly, we will raise the general damages award to $90,000.
For the reasons assigned, the judgment appealed is reversed and set aside insofar as it holds Henry Jackson, Peter Jean Louis and Jeanette Jean Louis liable, and plaintiff's suit against these defendants is dismissed. The judgment is amended to increase the award for general damages to $90,000. Otherwise, the judgment appealed is affirmed.
REVERSED IN PART, AMENDED IN PART AND AFFIRMED IN PART.