422 So.2d 631 (1982)
Jesse DEVILLE, et ux., Plaintiffs-Appellants,
v.
CALCASIEU PARISH GRAVITY DRAINAGE DISTRICT # 5, et al., Defendants-Appellees.
No. 82-264.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*632 McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiffs-appellants.
Jeansonne, Gibbens, Blackwell & Briney, Charlie Foret, Lafayette, Charles E. Broussard, Sulphur, for defendants-appellees.
Before FORET, CUTRER and STOKER, JJ.
FORET, Judge.
This suit for damages arose as a result of an incident in July of 1979, wherein Marie Deville, while in the process of sorting through mail which she had only seconds before removed from her mailbox, took a step backward onto a storm drain cover located on a storm drain and immediately fell through the manhole causing her severe physical injuries.
Plaintiff and her husband, Jesse Deville, sued the City of Sulphur, Gravity Drainage District # 5 of Calcasieu Parish, and its insurer, Aetna Insurance Company, alleging that they were strictly liable for her injuries, and alternatively, that her injuries were the result of their negligence.
The defendants implead one another, both seeking to absolve themselves from liability on the grounds that they were not charged with the custody of the catch basin in question.
*633 The trial court sustained the exception of no cause of action filed by the City of Sulphur, dismissing it from the original suit and from the third party demand of the Gravity Drainage District and the Aetna Insurance Company.
Furthermore, the trial court ruled that the claims of plaintiffs against the Gravity Drainage District and its insurer, Aetna Insurance Company, were barred by victim fault. From this adverse judgment, plaintiffs have appealed.

ISSUES
The issues herein may be stated as follows:
(1) Was the trial judge clearly wrong in finding that the City of Sulphur was not in custody of the storm drain?
(2) Was the drain defective?
(3) Was the trial judge clearly wrong in finding victim fault?
(4) Is the Gravity Drainage District strictly or absolutely liable?

CUSTODY OF THE DRAIN
The trial judge found that the City of Sulphur was not in fact in custody of the storm drain and is therefore not liable. We agree. The evidence clearly indicates that the Gravity Drainage District # 5 was in sole charge of maintaining the drains in question and that the only time that the City of Sulphur ever maintained the drain to any degree was in the case of an emergency (flooding) where it took steps to remove debris which impeded the drainage of street water and when the Gravity Drainage District was unable to get to the problem first.
Defendant, Gravity Drainage District, has answered the appeal seeking reversal of the trial court's granting of the City of Sulphur's exception of no cause of action to the Gravity Drainage District's third party demand. We find no merit to this argument. The trial court properly maintained the city's exception of no cause of action.

DEFECTIVENESS
The trial court made no finding as to whether or not the storm drain cover was defective. Defectiveness has been defined as the condition of a thing which causes "an unreasonable risk of harm to others, ...". Loescher v. Parr, 324 So.2d 441 (La.1975). For liability to attach, one must show that the injury was caused by a thing, that the thing was defective, and that the thing was in the custody of the defendant sought to be made liable. There is no doubt that the storm drain cover caused the injury, and that it was in the custody of the Gravity Drainage District. A more difficult question arises as to whether or not the thing was defective.
It is often difficult or near impossible to point to a specific defect in a thing. The cover itself has no moving parts and is constructed of metal. It was meant to safely secure the hole in the storm drain which would allow visual inspection of the contents within the drain. The drain is situated partly upon plaintiffs' property and very close to their mailbox. It is out in the open near the street.
Because of its position near the street and in the front yard of the plaintiffs, it is more probable than not that people would come into contact with it and would in fact walk upon it. There was no misuse of the drain by plaintiffs, the testimony being to the effect that she merely walked upon it.
In a similar case, Marquez v. City Stores Company, 371 So.2d 810 (La.1979), plaintiff and his son were descending upon an escalator when the youngster's tennis shoe got caught in the elevator, causing him injury. The court therein stated:
"The record indicates that the plaintiff and his son were properly using the equipment for the purpose and in the manner intended; there was no finding of contributory negligence. Presumably, several hundred thousand people have used this same escalator since it was installed in 1972 without a foot becoming wedged in the side opening. The fact that this escalator caught this child's shoe is an unusual occurrence in itself which *634 would not have happened had this escalator not been defective. Ott v. J.C. Penney Co., 360 So.2d 524 (La.App.1978); Tarantino v. City Stores Co. (Maison Blanche division), 278 So.2d 149 (La.App. 1973), writ denied 281 So.2d 741 (La. 1973)."
We likewise think that this accident would not have happened had the storm drain cover not been defective. Although plaintiff testified that she had not examined the cover on the day of the accident, she stated that she had seen it on the previous day and that it appeared to be firmly seated. The very next day, while reading her mail, she took a step backwards, and the cover flipped, causing her right leg to plunge into the hole and her left knee to strike the cover. Because of reports of similar problems in the area, this cover was, at one time, spot-welded so as to make it impossible, or at least more difficult, to remove. Mr. James Richard Guidry, who had been employed by the Gravity Drainage District for 23 years and presently its superintendent, testified that the reason the cover was spot-welded was, "because they were having problems with some and they were flipping".
In the case of Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3 Cir.1981), a similar situation was encountered. There, the driver of an automobile struck an open sewer manhole or its cover which was maintained by the defendant city. The trial court correctly held that merely showing that the cover was off the manhole was not sufficient to bring it within the category of being "defective", and refused to hold the city liable.
In this case, as distinguished from Goodlow, all of the testimony points to the fact that the cover was properly seated, covering the orifice leading into the catch basin. Since the cover was properly seated and the plaintiff nevertheless fell into the catch basin when she stepped upon it, it necessarily follows that the cover created "an unreasonable risk of harm to others...", and that it was in some way defective.
The case of Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980), presented a situation almost identical to the one at hand. The court stated:
"From the testimony of defendants' employees, it is clear that the catch-basin and its cover were in the care or custody of the defendants; other testimony shows that the cover's defect was the cause of plaintiffs' damages. It is also obvious that the cover was defective, in the sense that the risk of falling four or five feet into a catch-basin as a result of stepping upon a presumably solid, firm metal surface is unreasonable. Once these elements are proved, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, supra. Because none of these defenses was proved, defendants are liable for plaintiffs' damages."
We therefore find that the cover was defective.

VICTIM FAULT
The trial judge found that it was unnecessary to make a determination as to the defectiveness of the storm drain cover since he concluded that the plaintiffs' claim was barred by victim fault or contributory negligence. It is now well settled that in cases under Civil Code Article 2317, the only defenses available are a showing of victim fault, fault of a third person, or irresistible force. Loescher v. Parr, supra; Broussard v. Pennsylvania Millers Mutual Insurance Company, 406 So.2d 574 (La. 1981).
The learned trial judge concluded that victim fault or contributory negligence was present because the plaintiff had lived at this place for some sixteen years before the accident, had literally walked in the vicinity of the cover thousands of times before the accident, and had often stepped on it before. She had, when her children were young, knowledge that other children in the neighborhood would, on occasion, lift the cover. She knew that, in fact, another *635 neighbor had fallen into it within the last two years. On the day preceding the accident, she was sure that she had looked at it and that it was secure and in place. She had no independent recollection of looking at it on the day of the accident.
There has been much discussion as to the meaning of the term "victim fault". This Court, in Parker v. Hanks, 345 So.2d 194 (La.App. 3 Cir.1977), writ denied, 346 So.2d 224 (La.1977), and again in Hebert v. United Services Auto Association, 355 So.2d 575 (La.App. 3 Cir.1978), writ denied, 356 So.2d 1002 (La.1978), while admitting that term was not as of yet "fully developed", saw no error in designating victim fault as contributory negligence.
On the other hand, Judge Tate, as the organ for the Fifth Circuit Court of Appeal, in the case of Rodrigue v. Dixilyn Corporation, 620 F.2d 537 (1980), disagreed with the above conclusion and stated that contributory negligence was not a defense to an action in strict liability based on Code Articles 2317, 2318 or 2321. But see Dorry v. Lafleur, 399 So.2d 559 (La.1981), for a decision by a very much divided Louisiana Supreme Court, where a plurality of the Justices, including a Justice Ad Hoc, held that contributory negligence may indeed be a defense, perhaps under the guise of "victim fault" in strict liability cases. See also Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La.App. 3 Cir.1981); Miller v. Fogleman Truck Lines, Inc., 398 So.2d 634 (La.App. 3 Cir.1981), writ denied, 401 So.2d 358 (La.1981); Bacile v. Parish of Jefferson, 411 So.2d 1088 (La.App. 4 Cir. 1981).
Whatever the true definition of the term "victim fault" and/or "contributory negligence" be, that determination remains a factual question and we may only alter that finding by a determination that the conclusions of the learned trial judge were clearly wrong. We so find.
While all of the above facts are true, it is also true that:
"A person is not required to exercise the utmost caution at each moment to avoid every hazard of which he was ever aware. Even the `reasonable man' is permitted an occasional lapse of memory. The critical inquiry is whether or not he was exercising ordinary care for his own safety at the time of the accident and whether or not it was reasonable to forget the presence of the wire......" Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La.1981).
In this case we believe that it was not unreasonable for the plaintiff to forget about the presence of the cover. She had earlier that morning been preparing to pack and leave for the weekend with her family to go to a camp which they owned. The last chore to be done before leaving was to check the mail. While her husband was completing the preparations to depart in the backyard, she went out into the frontyard and removed the mail from their mailbox. While flipping through the mail, she apparently took one step back onto the cover which flipped, causing her to fall and injure herself. We believe that the rationale of Soileau v. South Central Bell, supra, is appropriate to the facts presented herein.

STRICT vs. ABSOLUTE LIABILITY
Plaintiffs raised the question as to the nature of the liability herein. They claim that the person charged with the custody or ownership of the instrumentality (here, the storm drain cover) is absolutely, as opposed to strictly, liable if someone is injured by the instrumentality. In Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982), the Louisiana Supreme Court described several activities which, by the act of performing them alone, could subject the enterpriser to absolute liability. These activities include, but are not limited to, pile driving, storage of toxic gas, blasting with explosives, and crop dusting with airplanes. It would take a great stretch of the imagination to conclude that the maintenance of a storm drain would also fit into the above category. We therefore find that the maintenance of the storm drain is not an ultra-hazardous activity within the meaning of the term, and the strict liability rules apply.

*636 SPECIAL DAMAGES
The special damages incurred as a result of the accident, which were proved up at trial, amount to $4,471.35. These include fees of doctors, hospital bills, medicines, rehabilitation clinics, and sitters for her invalid son while she was disabled.
We therefore award the sum of $4,471.35 for medical expenses and other special damages.

GENERAL DAMAGES
The plaintiff, Mrs. Deville, is a white female, approximately 50 years of age and weighing between 260 and 270 pounds. She is the mother of four children (two sons and two daughters). Her son, John, afflicted with Frederich's Ataria, a form of muscular dystrophy, resides with her. Her other son, Kerry, 19 years of age, also living with her, is also developing signs of the same affliction.
Plaintiff testified that because of her son, John's, disease, he is practically helpless. She was required to lift him into bed, bath him and dress him. In fact, all that he was able to do was feed himself. John is approximately six feet tall and weighs 200 pounds. She is no longer able to properly maintain him, as a result of her injuries, without a great deal of pain in her left knee. She, in fact, had to hire her two daughters to perform these tasks during the six-weeks period immediately following the accident at a cost of $500 each. Immediately after the accident, she was in severe pain and was unable to get out of the hole into which she had fallen for some fifteen minutes. She testified that there was a blood clot about the size of a grapefruit on her vagina. She also had various scratches and bruises on her left knee, stomach and in between her legs.
Five days after the accident, she saw Dr. Samuel Jenkins of Sulphur, Louisiana, who hospitalized her for treatment of the above injuries for approximately one week. Dr. Jenkins testified that there was a three to four-inch hematoma of the right labia majora and he thought that she might need surgical intervention. He also stated that the periosternum of the bone of the left leg was bruised. At that time, plaintiff, according to the doctor, was in a great deal of pain.
Dr. David Drez, Jr., an orthopedic surgeon from Lake Charles, Louisiana, saw plaintiff on July 2, 1980. At that time, he noticed stiffness and puffing around the left knee and she complained of pain around the knee while sitting. Dr. Drez noticed a significant degree of arthritis beneath the patella of the left knee. On August 13, 1980, Dr. Drez had her hospitalized and had an arthroscopy performed (a procedure used to deal with arthritic changes in the knee). Dr. Drez testified that she had a 15% to 20% disability to the left lower extremity because of arthritic changes, "and that if she did not have the fall, one would have to assume that she would not have had symptoms". In conclusion, he stated that he felt the fall must have precipitated the arthritis or at least caused it to be more symptomatic.
Dr. George P. Schneider, an orthopedic surgeon from Lake Charles, Louisiana, also saw the plaintiff. Her history as related to him was that she had contusions and a spraining injury to the left knee, and she, at the time he saw her, had "persisting residuals" of this injury. He last saw her on May 11,1981, and she, at that time, had a 10% to 15% loss of full extension of the knee. He testified that the problems that she had with her knee were related to the accident in that the softening of the articular cartilage on the back of the kneecap was accelerated by this direct injury to her knee and that she may need further treatment by surgery. On his last examination, she had a 35% permanent partial disability as a result of the accident with no foreseeable possibility of improvement.
Factors to be considered in assessing quantum for pain and suffering are the severity and duration thereof. Walker v. St. Paul Insurance Companies, 339 So.2d 441 (La.App. 1 Cir.1976), on remand, 343 So.2d 251 (La.App. 1 Cir.1977), writ denied, 345 So.2d 61 (La.1977).
*637 Because of the observations heretofore made as to the extent and duration of her injuries, and for the above and foregoing reasons, judgment is rendered in favor of plaintiff, Jesse Deville, and against the defendant, Gravity Drainage District # 5, in the following amounts:
1. $3,471.35 for medical expenses.
2. $1,000.00 for sitters for his invalid son while his wife was disabled.
For the above and foregoing reasons, judgment is rendered in favor of plaintiff, Marie Deville, and against defendant, Gravity Drainage District # 5, as follows:
1. $75,000.00 for mental and physical pain and suffering, and disability, past, present and future.
It is therefore ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Jesse Deville and against Calcasieu Parish Gravity Drainage District # 5, in the amount of $4,471.35, plus legal interest thereon from date of judicial demand; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Marie Deville and against Calcasieu Parish Gravity Drainage District # 5, in the amount of $75,000.00, plus legal interest thereon from date of judicial demand.
All costs of these proceedings, both in this Court and at trial level, are assessed against defendant, Gravity Drainage District # 5.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.