465 So.2d 213 (1985)
Eva Marie ROLLINS, Natural Tutrix for Lisa Marie ROLLINS, Plaintiff-Appellant,
v.
CONCORDIA PARISH SCHOOL BOARD, et al., Defendants-Appellees.
No. 84-96.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*214 Jack F. Owens, Jr., Harrisonburg, for plaintiff-appellant.
Elmer G. Noah, II, Monroe, for defendants-appellees.
Before DOMENGEAUX, STOKER, DOUCET, KNOLL and KING, JJ.
KING, Judge.
This appeal involves the issue of whether or not the trial court properly awarded damages and medical expenses to plaintiff for the injuries sustained by her daughter, a fourth grade student, when she fell off a merry-go-round on the school ground during school hours.
The plaintiff, Eva Marie Rollins, brought this suit as the duly qualified natural tutrix of her nine-year-old daughter, Lisa Marie Rollins, (Lisa) seeking to recover damages and medical expenses as a result of the child falling off a merry-go-round on the school ground during a physical education class. Plaintiff named as defendants, Dr. Edgar L. Gibson, principal of Monterrey School, where the accident occurred, the Concordia Parish School Board, (School Board) and its insurer, Commercial Union Insurance Company. From an adverse judgment the defendants appeal. We affirm.

FACTS
On March 2, 1982, Lisa Rollins, a nine-year-old fourth grade student, was riding a merry-go-round on the school grounds, during school hours, with several other girls during a physical education class. The merry-go-round was a used piece of playground equipment that had been disassembled and moved from another school. When it was reassembled on the school ground it was placed lower to the ground *215 because of its intended use by small children. The class consisted of approximately 40 students. The girls in the class were playing on playground equipment and the boys in the class were playing basketball on a basketball court about fifteen feet away. Mrs. Linda Green, a substitute teacher, was supervising the class by walking back and forth between both groups when, at approximately 9:30 A.M., she observed that the merry-go-round was spinning too fast. The merry-go-round was propelled by the girls sitting on it and pushing it with their feet. Recognizing the danger, Mrs. Green told the girls, including Lisa, to slow down and get off. Just as she admonished Lisa and the other girls, she heard two boys begin arguing over a basketball and one of them yelled for Mrs. Green. Mrs. Green turned away from the merry-go-round and walked toward the boys leaving the girls still rapidly spinning on the merry-go-round. Mrs. Green walked about twenty feet when she heard one of the girls yell that Lisa was hurt, so she returned to help Lisa. When she reached Lisa she asked what happened and Lisa told her that she fell off the merry-go-round and hurt her leg. Mrs. Green carried Lisa to the principal's office, where Dr. Gibson, the school principal, took charge of the situation. He put ice on Lisa's leg and instructed the school nurse, Judy McClain, to examine the leg. Mrs. McClain observed a knot smaller than an egg on the leg which led her to believe that it might be broken and she recommended immobilizing the leg. Dr. Gibson took Lisa to the sick room and placed an inflatable splint on Lisa's leg to prevent its movement. School Board policy mandated that in the event of injury to a student that the principal make every effort to contact the child's parents or family physician. Dr. Gibson called Lisa's home and no one answered. Since Lisa did not remember where her parents were, Dr. Gibson sent for her older brother, Ray, who was in the seventh grade of the school. Ray informed Dr. Gibson that his parents were at a doctor's office in Alexandria but he was unable to remember the doctor's name. Dr. Gibson then called an aunt of Lisa's in Ferriday. Receiving no answer, Dr. Gibson called Lisa's grandmother in nearby Natchez, Mississippi at approximately 10:30 A.M. Lisa's grandmother agreed to get her husband from work and come to school to bring Lisa to the hospital. About one hour later, the grandparents arrived at the school to take Lisa to the hospital. Lisa was admitted to the hospital at 12:30 P.M. and was immediately examined and x-rayed. Dr. Steven McDonald, the treating physician, concluded that Lisa had fractured both her tibia and fibula in her left leg. Dr. McDonald was unable to immediately place Lisa's leg in a cast due to the fact that her leg had swollen. As a result, Lisa was forced to stay in the hospital for five days to allow the swelling to subside so that a "long leg" cast could be applied.
Plaintiff contends that the School Board was strictly liable as the custodian of a defective thing (the merry-go-round) and negligent for their failure to provide adequate supervision of the physical education class. Plaintiff further claimed that Lisa's injuries were aggravated by the lack of immediate medical attention. The trial court found the School Board was negligent in not properly supervising the playground activities, that Lisa's injury was aggravated by the lack of immediate medical attention, and that Lisa was guilty of contributory negligence. Applying comparative negligence, under the provisions of LSA-C.C. art. 2323, the trial court found Lisa to be fifty percent at fault and reduced the damage award for her injuries from $10,000.00 to $5,000.00.
Both parties have asserted numerous specifications of error which present the following issues:
(1) Was the trial court correct in holding the merry-go-round was defective, yet refusing to apply strict liability?
(2) Was the trial court correct in holding the defendants negligent;
(3) Was the trial court correct in reducing plaintiff's recovery by fifty percent due to contributory negligence?

*216 (4) Was the trial court correct in its finding that the minor child had suffered $10,000.00 in damages?
(5) Was the trial court correct in holding that the minor child's injuries were aggravated by a lack of immediate medical attention?
(6) Was the trial court correct in assessing the costs equally to both parties?

APPLICABILITY OF STRICT LIABILITY
Plaintiff argues that strict liability should be applied and that, under Loescher v. Parr, 324 So.2d 441 (La.1975), the School Board can only escape liability if it shows the accident was caused by victim fault, third party fault, or an irresistable force. Plaintiff further argues that contributory negligence is not the same as victim fault and, under the express language of LSA-C.C. art. 2323, comparative negligence can only be applied when contributory negligence is a defense. But see, Dorry v. Lafleur, 399 So.2d 559 (La.1981); Travelers Ins. Co. v. Exxon Pipeline Co., 449 So.2d 1074 (La.App. 1st Cir.1984), writ den., 452 So.2d 179 (La.1984); Deville v. Calcasieu Gravity, Etc., 422 So.2d 631 (La.App. 3rd Cir.1982) for discussion of contributory negligence as victim fault and a defense in a suit involving strict liability.
Under C.C. art. 2317, the custodian of a defective thing is strictly liable for injuries caused by the defect. Entrevia v. Hood, 427 So.2d 1146 (La.1983). A thing is defective only if it creates an unreasonable risk of harm. Entrevia v. Hood, supra. Thus, plaintiff has the burden of proving that the merry-go-round contained a defect that created an unreasonable risk of injury and that the defect caused the injury.
Plaintiff claims that the merry-go-round was defective in that it was old and delapidated; that the ring which was the handrail encircling the merry-go-round and which acts as a handrail for the children to hold on to was "whopsided," and that the normal horizontal plane of the merry-go-round can be lowered within two to four inches of the ground when an adult exerts pressure on one side of the merry-go-round. Plaintiff argues that these physical conditions are defects which created an unreasonable risk of harm which caused Lisa's injuries.
A close examination of the record does not support plaintiff's assertions. Defendants' expert witness, J.D. Calhoun, is a semi-retired Mechanical Engineering professor at Louisiana Tech. He visited the school grounds to examine the merry-go-round. Mr. Calhoun took pictures of the merry-go-round which corroborate plaintiff's assertion that the ring, or handrail, which the children grip while the merry-go-round is in motion was not symmetrical. However, he stated that the ring was securely fastened to the merry-go-round and that it was "very functional" in that the children were still able to grip the bar while the merry-go-round spun around. He also testified that the seat of the merry-go-round would go down approximately two inches when he stepped on it but that it would not swing down far enough to hit the ground. Mr. Calhoun stated that this was to be expected and did not create a hazard. Mr. Calhoun further testified that he had observed the children ride the merry-go-round during a school recess and noticed that the merry-go-round seat did not get close to the ground. Mr. Calhoun thought the merry-go-round was in a good condition. Plaintiff's expert, Ray Harris, is a carpenter who works as an investigator for plaintiff's attorney. Mr. Harris agreed with Mr. Calhoun that the ring which was the handrail was not symmetrical and that it was firmly attached. Mr. Harris disagreed with Mr. Calhoun concerning how low the seat dipped to the ground when pressure was exerted on it. He testified that the merry-go-round seat dipped down as much as three or four inches when he stepped on it and that the seat would dip as low as five to six inches from the ground at its lowest point. However, Mr. Harris admitted he did not actually measure the distances nor did he examine the merry-go-round's operation while children played on it. The trial judge found that the merry-go-round *217 was defective only to the point that it was sitting too close to the ground but refused to apply strict liability. As noted above, plaintiff has the burden of proving defects and that the defects caused Lisa's injuries. There is no evidence in the record that would indicate that the height of the merry-go-round from the ground was a defect or that the height or any of the other alleged defects of the merry-go-round caused Lisa's fall. For this reason we reverse the trial judge's finding that the merry-go-round was defective only to the point it was sitting too close to the ground and find that plaintiff has failed to meet her burden of proof that the merry-go-round was defective or that any defects in the merry-go-round caused the child's injuries. For this reason, the trial judge was correct in not finding defendants strictly liable and it is thus unnecessary for us to decide whether comparative negligence is applicable under the particular facts of this case.

NEGLIGENCE OF SCHOOL BOARD
The defendants contend that the trial court erred in finding that the School Board was negligent in its failure to provide adequate supervision. On the day of the accident, Mrs. Green, a substitute teacher, was responsible for supervision of two physical education classes containing approximately 40 fourth grade students. The school's standard procedure was to combine two school classes for physical education, which allows one teacher to have a free period. Mrs. Green was not given specific instructions for class activities from the regular teacher, so she gave permission for the boys to play basketball and the girls to play on the playground equipment. The basketball court is approximately fifteen to twenty feet away from the playground equipment so Mrs. Green walked back and forth to supervise both groups. Mrs. Green noticed that Lisa and several other girls were going too fast on the merry-go-round, so she instructed them to slow down and get off. Just after Mrs. Green told the girls to slow down, Mrs. Green heard the boys arguing on the basketball court. Mrs. Green stated that she heard one of the boys yell, "Mrs. Green, he's got my ball." She turned away to walk over to the boys to see what was happening. Mrs. Green testified that she had walked about twenty feet in 30 to 60 seconds, when she heard one of the girls yell that Lisa was hurt. She then returned to the merry-go-round ground where she found Lisa lying next to the merry-go-round. Lisa testified that she fell on the inside of the merry-go-round but that one of the girls helped her up and moved her to the outside of the merry-go-round.
In the case of Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3rd Cir.1977), writs den., 352 So.2d 1045 (La. 1977), the standard of care imposed upon teachers concerning adequate supervision was explained by our court as follows:
"Our jurisprudence is settled that a school board is not the insurer of the lives or safety of children. School teachers charged with the duty of superintending children in the school must exercise reasonable supervision over them, commensurate with the age of the children and the attendant circumstances. A greater degree of care must be exercised if the student is required to use or to come in contact with an inherently dangerous object, or to engage in an activity where it is reasonably foreseeable that an accident or injury may occur. The teacher is not liable in damages unless it is shown that he or she, by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so. It also is essential to recovery that there be proof of negligence in failing to provide the required supervision and proof of a causal connection between that lack of supervision and the accident...". (Citations omitted.) Prier v. Horace Mann Ins. Co., 351 So.2d 265, 268 (La.App. 3rd Cir.1977), writs den., 352 So.2d 1042 and 352 So.2d 1045 (La.1977).
*218 Defendant argues that the children in this class were adequately supervised as a matter of law as the Louisiana courts have held that a school board provided adequate supervision where only one teacher had the responsibility of supervising anywhere from 50 to 120 children. See, e.g. Hampton v. Orleans Parish School Bd., 422 So.2d 202 (La.App. 4th Cir.1982); Batiste v. Iberia Parish School Bd., 401 So.2d 1224 (La.App. 3rd Cir.1981), writ den., 405 So.2d 531 (La.1981); Capers v. Orleans Parish School Bd., 365 So.2d 23 (La.App. 4th Cir. 1978). A review of these and similar cases indicates that the courts actually based their findings of adequate supervision on an examination of whether the supervision was reasonable in light of the age of the children involved and the circumstances surrounding the accident. For example, in Foster v. Houston General Ins. Co., 407 So.2d 759 (La.App. 2nd Cir.1982), writs den., 409 So.2d 660 (La.1982), the Second Circuit Court of Appeal held that one teacher was not enough to adequately supervise ten or eleven mentally retarded teenagers on a three block walk to a basketball court in light of the fact that another teacher was available to supervise the walk and the route taken included crossing a fairly busy intersection.
Thus, in this case we must determine whether Mrs. Green's supervision of Lisa's physical education class was adequate in light of the particular circumstances involved at the time of the accident. In this analysis, we are guided by the well-established principle that a trial court's finding of negligence is a finding of fact that cannot be overturned unless the court's finding constitutes manifest error. Enclarde v. Roach, 397 So.2d 855 (La.App. 4th Cir.1981).
In the present case, the evidence shows that two regular classes were combined to allow one teacher a free period. Another teacher was available and could have been present to help supervise the class. Mrs. Green saw that the young girls were going too fast on the merry-go-round and obviously feared that someone might get hurt. This is evidenced by her telling the children to slow down and get off the merry-go-round. Instead of making sure the children heeded her warnings, she abandoned what she had already observed to be a perilous situation to deal with another situation that was not urgent or dangerous. Mrs. Green testified that immediately after she first warned the nine-year-old girls to slow down and get off the merry-go-round she heard the boys yelling on the basketball court. She testified that she heard a boy holler, "Mrs. Green, he's got my ball." She then turned away and walked about twenty feet to the basketball court to stop the boys from squabbling over a ball when she heard the girls yell that Lisa was hurt. She estimates that at least thirty seconds elapsed between the time she turned away from the merry-go-round she thought was going too fast and when she heard the girls yell that Lisa was hurt. Mrs. Green testified that she didn't know if the boys were actually fighting or just hollering at each other because she never reached the boys. However, the basketball court was only ten or fifteen feet away from where she was standing. When she heard the noise, she turned and walked about twenty feet toward the boys. Had the boys been actually fighting she would have been able to see them and had they been in danger she probably would not have casually walked over to see what the problem was. The facts of the case show that Mrs. Green abandoned what she had already determined to be a perilous situation to investigate an argument over a basketball.
The minor child, Lisa Rollins, testified and her version of the accident is unrebutted. She stated that:
"Q. Whenever Mrs. Green told the little girls that were pushing it that they were going too fast, ...
A. Yes sir.
Q... and to get off.... did you try to get off?
A. Yes sir.
Q. Okay. You did try to get off.

*219 A. But first, they ... right ... as soon as Miss Linda went over to check on the boys, they started real fast again and I was .. I started holding on again. And...
Q. Okay. You did try to get off.
A. I tried telling them to let me off and when I .. when they were slowing down ... before Miss Linda turned around ... I was slung into the middle because they started going back fast and that's when I broke my leg. And then a girl helped me over to the side of the merry-go-round so I ...
Q. Okay. So you ... you've already said that you were sitting toward the inside and you tried to get up, and the merry-go-round was still going and that's when you broke your leg.
A. Yes sir.
Q. Okay. And how did you get from the inside of the merry-go-round turned around off on the ground? Did you try to walk off, or how did you get off?
A. No sir. Salanda Green helped me over there." (Tr. page 306)
The rapid speed of the merry-go-round and Mrs. Green ordering these nine-year-old children off the merry-go-round, but without herself making sure the children stopped and got off, was an activity where it was reasonably foreseeable that an accident or injury could occur. In these circumstances Mrs. Green failed to exercise a greater degree of care by which she might have prevented the act which caused the injuries.
Under these facts, we cannot say that the trial court was manifestly erroneous in finding that the supervision was inadequate, especially in light of the fact that another teacher was available but not used to help supervise the class.

CONTRIBUTORY NEGLIGENCE
A determination of contributory negligence is a factual question which can only be altered on appeal by a finding that the conclusions of the trial judge were clearly wrong. Deville v. Calcasieu Gravity, etc., 422 So.2d 631 (La.App. 3rd Cir. 1982). The trial judge found that Lisa was contributorily negligent in riding "on the inside of the merry-go-round and apparently trying to get off of the merry-go-round while the machine was in motion." He found her fifty percent at fault and reduced her recovery of damages accordingly. Lisa admitted at trial that she had been facing inward on the merry-go-round and that she broke her leg when she tried to obey the instructions of Mrs. Green and turn facing outward to get off the merry-go-round. Dr. Gibson testified that all the children were warned not to ride the merry-go-round facing inward and he believed that Lisa was aware of these warnings. Since this evidence is supportive of the trial judge's decision, we cannot find that the trial judge was clearly wrong in finding Lisa contributorily negligent and reducing the amount of damages for her injuries by fifty percent.

DAMAGES
As a result of her fall, Lisa sustained a transverse fracture of the tibia and fibula in her left leg. Dr. McDonald testified that, on March 2, 1982 when she was admitted in the hospital, she was in moderate pain and she was given medication orally because she feared a pain shot. Dr. McDonald was unable to place a cast on her leg immediately because the leg had swollen. Lisa stayed in the hospital for five days with her leg elevated until the swelling subsided. Neither bone fracture was comminuted, that is, the bones were not out of alignment nor had the bones penetrated the skin. On March 6, 1982 Dr. McDonald placed a long cast on her leg which covered her upper thigh down to her toes. A new long leg cast was placed on Lisa's leg on March 19, 1982 because the original cast had become too large due to inactivity. On April 15, 1982 the fibula was healed, which allowed Dr. McDonald to replace the long cast with a short cast which Lisa wore until May 6, 1982. During the entire period that Lisa's leg was in a cast, she was forced to use a wheelchair *220 because she was unable to master the use of crutches due to her petite size.
On May 6, 1982 Dr. McDonald removed the short cast and replaced it with a posterior splint. This consisted of a piece of stiff plastic or plaster fitted around the back half of the leg which is secured by wrapping the leg with bandages. Lisa at this time was still prohibited from putting weight on her leg. On May 11, 1982 Lisa's mother complained to Dr. McDonald that Lisa's ankle was swelling. Since this was not accompanied by pain, Dr. McDonald felt it was part of the recovery process. On May 31, 1982 the splint was removed and x-rays showed that her tibia was healed. Lisa was still prohibited from putting weight on the leg and she was not allowed to walk until June 4, 1982. On July 9, 1982 Lisa complained that she was experiencing pain when she walked. Dr. McDonald said this pain was from muscle atrophy and advised her to use a heating pad for pain. Dr. McDonald testified that Lisa made an average recovery for a person her age and that there are no permanent residual effects from the injury. Mrs. Rollins testified that Lisa still complains of pain occasionally, especially when the weather changes.
The trial judge awarded Lisa $10,000.00 in damages, which was reduced by fifty percent due to her comparative negligence. We find no abuse of discretion by the trial court in its determination of damages. As we recently noted in Gearen v. Insured Lloyds Insurance Company, 461 So.2d 1192 (La.App. 3rd Cir.1984):
"[W]e may not substitute our subjective belief as to appropriate damages due; rather the finding below is to be honored in the absence of a `clear abuse of discretion'."
We do not find a clear abuse of discretion by the trial judge in the award for damages and the award will be affirmed.
Defendants specify as error the trial court's finding that Lisa's injury was aggravated by the lack of medical attention. Lisa arrived at the principal's office at 9:30 A.M., yet she was not admitted into the hospital until 12:30 P.M. Dr. McDonald testified that Lisa's leg couldn't be put into a cast on the day of the accident because the leg had swollen. Plaintiff argues that, had Lisa been taken to the hospital immediately, her leg could have been put in a cast on the day of the injury instead of five days later. However, Dr. McDonald testified that the swelling took place within 30 to 60 minutes after the injury. It took Lisa's grandparents approximately one hour to drive from the school to the hospital. Thus, even if school personnel had immediately driven Lisa to the hospital after the principal was unable to reach her parents, the swelling would have still manifested itself before Lisa arrived at the hospital. For this reason we reverse the trial court's finding that a lack of immediate medical attention aggravated Lisa's injuries.
Finally, both parties argue that the trial court erred in dividing the costs equally between the parties. We find that the trial judge did not abuse the broad discretion allowed him under LSA-C.C.P. Art. 1920 in dividing the costs of the trial equally between plaintiff and defendant where he found both parties equally at fault under our comparative negligence statute.
For the foregoing reasons, we affirm in part and reverse in part. Costs of this appeal are to be paid by defendants-appellants.
AFFIRMED IN PART; REVERSED IN PART.
DOMENGEAUX, J., dissents and assigns reasons.
STOKER, J., dissents for the reasons assigned by DOMENGEAUX, J.
DOMENGEAUX, Judge, dissenting.
I agree with the majority opinion to the extent that it finds no defects in the merry-go-round; I agree also that the defendants are not strictly liable. The majority opinion is also correct when it finds that young Lisa was negligent. Finally, I agree that *221 the so-called lack of immediate medical attention did not aggravate Lisa's injuries.
I disagree with the majority opinion which finds that the defendants are responsible herein because of fault on the part of Mrs. Green based on inadequate supervision.
The majority opinion generally cites the correct jurisprudence concerning these type cases, but, I respectfully suggest, the jurisprudence is misapplied to the facts of this case. To hold the School Board responsible in this instance is tantamount to making the Board the insurer of the lives or safety of children.
No one suggests that the forty students under Mrs. Green's supervision was an unreasonable or inordinate amount of children for proper supervision. The jurisprudence is replete with instances where it is reasonable for one supervisor to be in charge of forty, and even more students. Neither can it be seriously argued that forty children under the charge of Mrs. Green in this case was unreasonable in light of the age of the children involved and the circumstances surrounding the accident herein.
Given the facts of this case, it is difficult for me to fault Mrs. Green. After instructing the children to slow down and get off of the merry-go-round, she was confronted with a possible altercation among the boys who were playing a short distance away. Her response was reasonable. It is evident that she proceeded in the direction of the boys to quell any disturbance which may have been brewing.
It is interesting to note that the trial judge, in holding that Mrs. Green was negligent, cited the case of Foster v. Houston General Ins. Co., 407 So.2d 759 (La.App. 2nd Cir.1981), writ denied, 409 So.2d 660 (La.1982), as apparent authority for his decision. The Foster case bears no similarity to the case at hand. In the first place, the Foster case involved a retarded child who required much closer supervision; secondly, this retarded child and other retarded children were taken off campus on a walking trip across a heavily traveled thoroughfare. Obviously much closer supervision was required under those circumstances.
Further, and even assuming arguendo that Mrs. Green was negligent in carrying out her duties of supervision, such negligence was not a cause in fact of the accident. Mrs. Green noted that the merry-go-round was going too fast and told the children on it to slow down and get off. Lisa was evidently riding the merry-go-round improperly (as found by the trial court) by facing inward and Mrs. Green instructed Lisa to face outward to get off. The majority holds that Mrs. Green was negligent in not making sure that the students on the merry-go-round heeded her instructions, and that she acted negligently in turning from what she had observed to be a perilous situation to deal with another situation which the majority holds was "not urgent or dangerous."
With due respect to the views expressed in the majority opinion, I am not certain what Mrs. Green might have done to prevent the accident. If the speed of the merry-go-round was a cause in fact of Lisa's fall, then Mrs. Green had done all she could do to cause the children to slow it down other than to engage in physical intervention. Moreover, the accident occurred so soon after Mrs. Green instructed the children to slow down that it is not clear that Mrs. Green might have prevented the accident by some sort of physical intervention. From the standpoint of time and distance there is no proof physical intervention might have been possible.
While we may strongly suspect that speed was a factor in causing Lisa to fall off of the merry-go-round, we really do not know why Lisa fell other than Lisa's statement that she was thrown to the middle of the apparatus as she was attempting to turn around. She suggests that she began to turn around as the merry-go-round was slowing down but "they started going back fast and that's when I broke my leg." We do not know that Mrs. Green could have prevented this occurrence.
Under the circumstances, I respectfully dissent from that part of the holding of the *222 majority which holds there is liability on defendants' part based on the negligence of Mrs. Green.