CUTRER, Judge.
This appeal presents the sole issue of the correctness of the awards made by the trial court in this suit arising out of injuries received in an automobile accident.
Debra and Joseph Roque, wife and husband, brought suit for damages against Sheena Boyd Monk and her insurer, State Farm Mutual Automobile Insurance Company (State Farm). Debra was a passenger in a pickup truck being driven by Joseph Roque, which collided with a car driven by Ms. Monk.
The trial judge rendered judgment in favor of the plaintiffs and against the defendants as follows:
To Joseph Roque
Past medical expenses $ 2,356.93
Future medical expenses 750.00
Debra’s past lost wages 4,096.00
Debra’s future lost wages 4,662.00
Total $11,864.93
To Debra Roque
General damages for pain, suffering, anguish and disability $25,000.00[1]
*507 On appeal, defendants challenge the award of future medical expenses and future lost wages; defendants also contend that the general damage award should be reduced from $25,000.00 to $10,000.00. For the reasons to follow, we affirm the judgment of the lower court.
FACTS
On February 5, 1982, Joseph Roque was driving his Ford pickup truck on Highway 1 in Natchitoches Parish. Passengers in the truck were Debra and the Roques’ one-year-old infant son. Ms. Monk had stopped in obedience to a stop sign controlling a road intersecting Highway 1. She then pulled out into the Roques’ lane of travel. Roque was unable to avoid the resulting collision. Both vehicles sustained heavy damage. The impact caused Debra to be hurled forward, and her head struck the windshield and “cracked it all up.”
Defendants do not challenge the trial court’s finding of liability as to Ms. Monk; rather, they contest the amount awarded for general damages ($25,000.00), future medical costs ($750.00) and future lost wages (4,662.00).
ASSESSMENT OF DAMAGES
A. General damages.
In reviewing a lower court’s determination of general damages, we are charged with honoring the “much discretion” afforded the factfinder. We may not substitute our subjective belief as to the appropriate damages due; rather the finding below is to be honored in the absence of a “clear abuse of discretion.” Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir.1979), writ den., 381 So.2d 1233 (La.1980). Although it appears that the $25,000.00 award is somewhat high, we cannot find that that amount is a clear abuse of the trial court’s much discretion. See McGrath v. Industrial Piping Co., 340 So.2d 1037 (La.App. 1st Cir.1976).
The facts reveal that Debra began feeling dizzy shortly after her head struck the windshield. Becoming frightened by her physical manifestations of dizziness and a general soreness over her body, the plaintiff promptly (within 45 minutes after the accident) went to the emergency room of a local hospital where she requested to see the first doctor available. The examining physician, Dr. Robert Sills, opined that Debra had suffered “an acute muscle sprain of the posterior neck, left side and a low back muscle sprain.” He also prescribed medication for plaintiff’s pain and advised her to report for further treatment within three days.
The accident occurred on a Friday, and the plaintiff was bedridden for the next two days. She returned to Dr. Sills’ office on Monday, but transferred to Dr. Joseph Thomas the next day.[2] Dr. Thomas noted that the plaintiff had “severe pains in her neck and pains in the top of her head and forehead and left ear.” It was his opinion that Debra “was suffering from a contusion of the head and a myoligamentous sprain of the cervical spine.” He deemed the sprain to be “severe.”
Dr. Thomas prescribed muscle relaxers, pain pills and physical therapy for Debra’s condition. From the time of the accident until the date of trial in January 1983, the plaintiff received more than sixty treatments of physical therapy. Debra’s physical pain and discomfort resulted in her missing almost three consecutive months of work.
She was twenty-nine years of age at the time and employed in a secretarial position. Dr. Thomas provided a “temporary release” for Debra to return to her work on April 29, 1982. He testified that the release was temporary in order to determine if Debra could return to her regular routine. The plaintiff returned to her duties on a full time basis in early May 1982, but she continued to suffer pains in her neck and lower back. Debra testified that her back would bother her after she sat in a *508 typing position for a period of time. She also testified that, when she returned to her home in the evening, her pain would worsen.
Although Dr. Thomas wrote plaintiffs attorney on June 1, 1982, indicating that the plaintiff was “maximally improved,” he continued to see Debra and on July 8, 1982, prescribed that she work on a reduced schedule. At trial Dr. Thomas testified that additional hours of work beyond halftime “caused [plaintiff] to have increased symptoms of pain and disability in her back and neck.” Dr. Thomas also stated that the plaintiff desired to return to her work full time, but he did not feel that her injuries would allow her to do so.
Debra was examined by Dr. Thomas four days prior to the day of trial and nearly one year after her accident. That examination revealed that the plaintiff was still suffering “mild to moderate spasms in the trapez-ius and spinal erector muscles.”
Testimony from Joseph, Debra and from Beverly Radial, the Roques’ neighbor, established that the plaintiff had been in excellent health and very active prior to the accident. She had been continuously employed since her late teens in secretarial jobs, and she also went to dances with her husband and bowled on a weekly basis. The plaintiff had twiced tried to bowl again after the accident, but she was unable to do so. She was subsequently forced to resign her membership in a league bowling team.
The testimony also indicated that the plaintiff was no longer able to work in the yard with her husband and that her housekeeping had seriously deteriorated. When she returned home from work, her back would be hurting such that she often went directly to bed. Ms. Rachel testified that Debra could not handle her young son as she once could, because of her back pains. At the time of trial, the plaintiff was still taking muscle relaxers and pain pills, and she was continuing with a limited number of her physical therapy sessions.
The defense produced no witnesses to rebut the plaintiffs evidence. The only defense evidence as to the plaintiffs injuries was a letter written by Dr. Baer Ram-bach, an orthopaedic surgeon who examined Debra once on October 19, 1982.[3] Dr. Rambach observed tenderness to the touch in the areas of the plaintiffs lower back and left shoulder. He also observed that she had a slightly limited restriction in raising her legs from certain positions. No evidence was found of nerve root damage or of bone fractures of any nature. Dr. Rambach’s diagnosis of sprain to the lower back and cervical region was consistent with those provided by Drs. Sills and Thomas. He opined that Debra should be able to treat her symptoms with mild analgesics, and he felt that she should not be left with any “permanent residuals from the injuries she sustained.”
When questioned regarding Debra’s future pain and the treatment necessary to alleviate her problems, Dr. Thomas provided the following answers:

“Q. Based upon your having followed this lady, and she’s almost a year since this accident happened, can you give Judge Cunningham an estimate or any idea as to if or when she will be able to return to full-time employment?

A. Well, these situations vary from individual to individual, and from incident to incident. I felt that she should have by now reached the point to where she would be completely free of symptoms except maybe when you’d have bad weather. But this lady continues whether the weather’s bad or whether it’s good, and she continues to have pain in her back and her neck when she pursues her activities beyond a certain point. Half-time was determined in her case. How long this is going to last I don’t have the slightest idea. Some people recover; some people develop a chronicity in this type of 
*509
injury which persists for months and even years.

* * * * * *

Q. You think she’ll have to continue on a part-time work schedule?

A.I would think so, yes, sir.

Q. Do you attribute her present and all of the problems that you have handled since she was injured in the automobile accident, do you attribute that to the automobile accident that she was in?

A. Yes, sir.

Q. Do you have any other history of any problems, either pre-dating the automobile accident or any new accidents that have happened, since that automobile accident happened?

A. No, sir.

Q. Do you feel that she will continue to need medical care?

A. She’s going to continue to need medication and I think she’s going to continue to need therapy to the muscle structures and soft tissues in her back and neck. I think these can be ordered on an ongoing basis without her having to be seen by a physician until such time as she becomes free of symptoms.

Q. Do you think she periodically needs to have physiotherapy?

A. Yes, sir.

Q. Can you give us an estimate of how long that should continue?

A. No, sir. I couldn’t.

Q. Do you think she will continue to need medications for pain and muscle relaxers and things of that nature?

A. Yeah, I do. Yes, sir.”

In light of the medical and lay testimony indicating that the plaintiff had suffered debilitating pain for one year and that she would continue to experience pain until an undetermined point in the future, we cannot say that the trial court abused his much discretion in awarding Debra $25,-000.00 in general damages.
B. Future medical expenses.
Defendants argue that the trial court’s award of $750.00 for future medical expenses for Debra is excessive. We disagree.
In less than one year prior to trial the plaintiff incurred medical expenses in the amount of $2,185.93.[4] Although he could not estimate the period necessary for Debra to recover completely, Dr. Thomas did testify that she would require further medication and physical therapy treatments, the latter on a less frequent basis with the passage of time.[5] Under these facts we do not find that a $750.00 award for future medical expenses was an abuse of discretion.
C. Future lost wages.
The trial court awarded $4,662.00 for Debra’s future lost wages. In his brief reasons for judgment, the trial judge indicated that he reached this figure by allowing Debra $388.50 per month in lost wages for a period of twelve months. We cannot say that the trial court was clearly wrong in this conclusion. Because of Dr. Thomas’ testimony that Debra’s infirmities could conceivably continue for months or years, we are not willing to disturb the lower court’s determination of twelve months as being an appropriate period in which to make an award for lost future wages.
For these reasons we affirm the judgment of the trial court. Costs of this appeal are assessed against the defendants-appellants.
AFFIRMED.

. State Farm's liability is limited to its policy limits of $25,000.00.

. Debra testified that she stopped seeing Dr. Sills because of the long office delays involved and that Dr. Thomas had been her doctor on prior occasions.

. This examination occurred three months prior to trial. Dr. Thomas, who testified at trial, had seen the plaintiff at least three times since her singular visit to Dr. Rambach.

. The breakdown of those expenses is as follows:
Physical therapy treatments $1,368.00
Dr. Thomas’ services 670.00
Drug bills 147.93

. Dr. Thomas did not rule out the possibility that the plaintiff could continue to suffer for months or years.