CUTRER, Judge.
The plaintiff, Carol Ann Null[1] was a guest passenger in Paula Ann Maricle’s automobile when they struck the rear of a white Cadillac driven by Russel McKinnon and owned by Alexander Zajew. Null sued Maride and her insurer, Lloyd’s Insured Insurance Company (Lloyd’s), McKinnon and his alleged insurer, Allstate Insurance Company (Allstate), and Zajew. On a motion for summary judgment, Allstate was dismissed upon proof that it was not the insurer of McKinnon. McKinnon and Za-jew are also no longer parties to this suit due to Null’s failure to serve them with service of process. The only remaining defendants are Maride and her insurer, Lloyd’s. After suit was filed and before trial, Lloyd’s deposited $5,393.29 (the amount of Maricle’s liability coverage limit plus legal interest and court costs to the date of deposit) into the registry of the court. 'Null withdrew this sum prior to trial.
The trial court found that both Maride and McKinnon were negligent. He also found that McKinnon was uninsured. He rendered judgment against Maride and Lloyd’s, in solido, for $8,044.83 subject to a credit for the sums deposited by Lloyd’s. Maride and Lloyd’s appealed; Null appealed seeking an increase in damages.
The issues presented on appeal are:
(1) Whether the drivers of both automobiles were negligent. If McKinnon is found negligent, we must decide if he was an uninsured motorist, and
*1194 (2) Whether the trial court’s award was inadequate.
NEGLIGENCE OF MARICLE
This accident occurred at 9:30 P.M., on a straight and level portion of Louisiana Highway 165 between Forest Hill and Glenmora. The night was clear .and the roadway was dry. Maride, with Null as her guest passenger, was proceeding South approaching an area where a lounge is located. As these ladies were driving along at 55 miles per hour, they were talking. Null was looking down into her purse. Maride was looking toward Null. Null looked ahead and exclaimed, “Paula Mae!” Maride then looked ahead and saw, about twenty feet away, a white Cadillac stopped or moving slowly. Maricle’s car slammed into the rear of the Cadillac causing it to go across the road to the left ditch. The damage to the cars was heavy. Null received injuries to both arms and her face.
The accident occurred near the driveway of a lounge located on the East side of the highway. In front of the lounge and near the highway was located a large overhead flood light which was operating at the time of the accident. The area was well lighted and the white Cadillac was clearly visible. Null and Maride were unable to ascertain whether the tail lights and left-turn signal lights of the Cadillac were functioning at the time of the accident. This is understandable as neither of these persons were looking ahead until just an instant before this rear-end collision.
State Trooper Michael Migues was called to investigate the accident. He arrived at 10:02 P.M., and found the vehicle in front of the lounge but was unable to give the exact spot of the impact. He stated that he found that McKinnon was the driver of the white Cadillac. McKinnon told the officer that he had stopped, intending to make a left turn. He stated that he had his lights on along with the left-turn indicator, when he was struck from the rear by Mari-de. Due to the heavy damage to the Cadillac, the officer was not able to ascertain whether the lights were operable. The statement by McKinnon,[2] that he was in the process of turning left is corroborated by the fact that the impact of the collision hurled his car -across the northbound lane of the highway and into the ditch on the West side of the highway. The officer issued a citation to Maride for failure to maintain proper control.
The trial court, in its reasons for judgment found Maride negligent, stating as follows:
“[T]he Court is obliged to determine that the obvious and overwhelming cause of the accident was the negligent manner in which Paula Mae Maride was operating her vehicle, and that her negligence was, to say the least, a proximate cause of the accident.”
There is no need to cite any authority for finding Maride negligent. She was completely inattentive and oblivious to the traffic conditions ahead of her as she proceeded along at 55 miles per hour. She struck the McKinnon car instantaneously after looking ahead, causing heavy damage to the vehicles. As the trial court stated, Maricle’s negligence was “obvious and overwhelming.”
As to any negligence of McKinnon, the trial court stated as follows:
“The only evidence indicating any negligence on the part of McKinnon are the statements of the occupants of the rear ending vehicle to the effect that the car in front of them appeared to be stopped, together with the statement made by McKinnon to the investigating officer shortly after the accident to the effect that he had stopped to make a left turn. There was no evidence as to how long he had been stopped prior to the impact or why he was stopped. Although the evidence is very thin on this point, the Court concludes that McKinnon’s action in stopping his vehicle under all prevailing conditions gives rise to the presumption of some negligence on his part which contributed to this accident, .... ”
*1195 We disagree with the trial court that McKinnon’s stopping to make a left turn creates a presumption of negligence by McKinnon.
It is well settled that a left-turning driver is charged with an exceptional duty of care. There is no presumption, however, that the driver of a left-turning vehicle is negligent. Whether there has been a breach of duty by the left-turning driver must be proved. In determining whether a left turn can be made in safety, the left-turning motorist has a right to assume that the following motorist will observe the duties imposed upon him by law and common sense. Thus, he may assume that the following motorist will keep a proper lookout and keep his car under proper control. Natchitoches Motor v. Travelers Ins. Co., 372 So.2d 811 (La.App. 3rd Cir.1979).
The trial court’s finding that McKin-non’s stopping to make a left turn created a presumption of negligence was error. There is no proof that the stop was made suddenly or that his position was not visible to a driver keeping a proper lookout. The mere stopping to make a left turn was not negligence. McKinnon had a right to assume that Maride was keeping a proper lookout to ascertain his presence and was keeping her car under proper control to meet the existing circumstances.
Maride, however, was not keeping a proper lookout. On the contrary, she was completely inattentive as to McKinnon’s procedure to make a left turn. This inattentiveness continued until an instant before the impact and it was too late for Maride to avoid the accident.
The sole cause of the accident was the overwhelming negligence of Maride. The plaintiff, under the circumstances, has failed to show that McKinnon was negligent.
Having come to this conclusion, it is not necessary that we decide whether McKin-non was uninsured.
DAMAGES
As a result of the collision, Null sustained a fracture of a bone in the left wrist and a fracture of the metacarpal bone in the right hand. She also received a laceration of the lower lip and facial bruises. She went to see Dr. Douglas Gamburg who placed her right hand in a short arm cast. He placed a long arm cast on the left wrist and arm. She was allowed to return home. He gave her medication for pain.
He was of the opinion that these injuries would produce moderately severe pain for the first few days with a gradual reduction of pain thereafter. Null returned to Dr. Gamburg on May 13, 1981. She had no particular complaints of pain but only of discomfort and Dr. Gamburg felt that she was progressing normally. She returned to Dr. Gamburg on May 27, 1981. She had no particular complaints and was progressing well. This physician removed the long arm cast and replaced it with a short arm cast. The short arm cast on the right arm was replaced with a removable splint which could be removed for washing or bathing. X-rays revealed a satisfactory alignment of the fracture.
Dr. Gamburg saw Null again on June 8, 1981 (five weeks post injury). She had no specific complaints at that time. Her right hand had a full range of mobility with some swelling. On a visit to the physician on June 30th, the remaining cast was removed. Null saw this physician for the last time on July 21, 1981, at which time she had progressed very well. He felt that she was approaching full recovery and he discharged her on that date. He felt that she could return to light duty at that time and would progress to heavier activity. He stated that the recovery was satisfactory with only a 5% potential disability of the left arm. The cut on Null’s lower lip healed, leaving only a small scar. Null returned to work the day after her release, July 22, 1981.
The trial judge awarded $1,276.03 medical expenses and $1,768.30 for loss of wages, or a total of $3,044.83 special damages. He also awarded $5,000.00 general *1196 damages. In his reasons for judgment, he stated as follows:
“With regard to general damages, plaintiffs own treating physician indicated she had made an excellent recovery from her injuries with no disability in her arm, but determined a 5% potential disability involving loss of physical function relating to possible loss of movement during weather change and possible degenerative arthritis in later life. There was a very slight scaring on the lower right lip which is discernable upon inspection.”
We find no abuse of discretion by the trial court in its award for general damages. In reviewing a trial court’s determination of general damages, we are charged with honoring the “much discretion” afforded the factfinder. We may not substitute our subjective belief as to appropriate damages due; rather, the finding below is to be honored in the absence of a “clear abuse of discretion.” Roque v. State Farm Mut. Auto. Ins. Co., 445 So.2d 506 (La.App. 3rd Cir.1984). Although it appears that the $5,000.00 award is on the low side, we cannot find that that amount is a clear abuse of the trial court’s discretion.
Having come to these conclusions, we shall amend the judgment of trial court, limiting the liability of Lloyd’s to the $5,000.00 liability coverage. Judgment for the remainder shall be rendered against Maride, individually.
For these reasons, the judgment of the trial court is amended so as to limit the “in solido” judgment against Paula Mae Mari-de and Insured Lloyd’s Insurance Company to $5,000.00. The remainder of the judgment, $3,044.83, is to be paid by Mari-de, individually. In all other respects the trial court judgment is affirmed.
Since Lloyd’s tendered its policy limits ($5,000.00) plus legal interest and costs up to the date of deposit, it cannot be cast for further interest and costs. Liwerant v. Boston Insurance Company, 198 So.2d 925 (La.App. 4th Cir.1967). Thus, costs of the trial court and this appeal are to be borne by Maride.
AMENDED AND AFFIRMED.

. At the time this suit was filed, plaintiffs name was Carol Ann Gearen. Since that time she has married and is now Carol Ann Null.

. McKinnon was not called to testify at trial.