499 So.2d 1042 (1986)
Margaret J. AUCOIN, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY CO., Defendant-Appellant.
No. 85-1006.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*1043 David S. Cook, Lafayette, for defendant-appellant.
Preston N. Aucoin and Gilbert W. Aucoin, Ville Platte, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
DOUCET, Judge.
This appeal presents the issues of the trial court's awards for damages, penalties and attorney's fees arising out of a vehicular accident.
Margaret Aucoin brought suit for damages against Hartford Accident and Indemnity Company, her uninsured motorist carrier. The suit arises out of injuries received by the plaintiff when her car was struck broadside by a pickup truck being driven by Glen LaFleur. The truck was traveling out of a private circular drive into the right-of-way street where the plaintiff was proceeding. The pickup struck the car in the driver's side causing it to spin around one to two times. LaFleur's liability insurer paid plaintiff $10,000.00, its policy limits. Out of this the plaintiff reimbursed Hartford almost $5,000.00 for medical expenses that had been paid by Hartford under the medical payment provision of its policy.
The trial court rendered a lump sum judgment in favor of plaintiff and against Hartford for $150,000.00 plus penalties of 12% and attorney's fees in the amount of $7,500.00.
From this judgment Hartford appeals contending that the award of $150,000.00 is excessive and that penalties and attorney's fees should not have been awarded or, in the alternative, the attorney's fees should be reduced.

GENERAL DAMAGES
In reviewing a lower court's determination of general damages, we are charged with honoring the "much discretion" afforded the factfinder. We may not substitute our subjective belief as to the appropriate damages due; rather the finding below is to be honored in the absence of a "clear abuse of discretion." Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir.1979), writ den., 381 So.2d 1233 (La.1980). Although it appears that the $150,000.00 award is somewhat high, we cannot find that that amount is a clear abuse of the trial court's much discretion. Roque v. State Farm Mut. Auto. Ins. Co., 445 So.2d 506 (La.App. 3rd Cir.1984).
This accident occurred on October 14, 1983 at 8:00 A.M. Plaintiff's vehicle received a severe blow to the driver's side causing the plaintiff head, neck and back injuries. She went to the emergency room of the Ville Platte Humana Hospital. She was examined by Dr. Henry Dupre, a general practitioner. He found bruising and swelling of the left forehead, tenderness in the trapezius muscle group. The limitation of motion of the neck was noticeable. X-rays were taken and examined. Dr. Dupre felt that the plaintiff had a severe strain and prescribed medication. Four days later, this physician saw the plaintiff again. The original complaints were present plus additional complaints of numbness in her fingers on both hands. The condition caused great concern by Dr. Dupre. He felt this numbness could indicate a disc problem.
He immediately referred her to Dr. Steven Snatic, a neurologist. Dr. Snatic examined the X-rays previously taken and found that they showed congenital enlongated transverse processes on both sides of the back. He felt that this condition was aggravated and was causing pain. He recommended a brace be worn. He also told the plaintiff not to try to do any teaching but to take it easy, massage the area and do some prescribed exercises.
*1044 Dr. Snatic saw her again on November 2, 1983. The plaintiff seemed to be improving. The same treatment was prescribed. On November 21, 1983, the plaintiff saw Dr. Snatic again. She seemed to be improving and the same treatment was continued. On December 22, 1983, however, the plaintiff reported to Dr. Snatic complaining of an increase in neck pain and stiffness. She also had intermittent numbness of both hands. Dr. Snatic prescribed physical therapy and scheduled a nerve conduction test. Her nerve conduction test appeared normal. He then recommended that a myelogram be performed. He was concerned that the plaintiff may have a disc problem. The myelogram and CT scan was performed January 13, 1984. The myelogram showed some "asymmetry of nerve roots at the C8 nerve root." This indicated that some pressure could be on the nerve root. This doctor felt that the enlongated transverse condition at the C7 level had been adversely affected by the trauma of the accident.
Dr. Snatic saw the plaintiff again on May 31, 1984. Plaintiff continued to have pain between the shoulder blade and numbness in both hands. He suspected a disc problem. He saw the plaintiff in October 1984 and the complaints and problem were the same.
Hartford had the plaintiff examined by Dr. Luke Bordelon, an orthopedic surgeon. This physician's report, dated May 7, 1985, was introduced into evidence. The report states as follows:
"This is an interesting situation. Apparently this young lady has a severe cervical strain and has residual symptomatology. She is consistent with the history and the physical findings. She seems to have genuine difficulty.
Unfortunately, I don't have anything good to offer her as far as treatment or something that will produce a cure. I think she is having difficulty and cannot perform the activities of which she states. I believe this will continue for an indefinite period of time. I just really cannot say how long this will continue.
I think that if she wants to she might try some physical therapy and even mobilization and manipulation on a regular basis. This might be of some help in reducing some of the symptomatology.
I thank you very much for referring this lady. I appreciate seeing her. I would rate her as having a 25 percent physical impairment of the cervical spine on the basis of the continued difficulty following the cervical strain."
The medical testimony reflects that the plaintiff suffered a 25% physical impairment of the cervical spine. Her condition was due either to a compressed nerve or the aggravation of a congenital defect. The physicians cannot estimate the time that this condition may continue. They feel that it will continue for an indefinite time in the future. The plaintiff's ability to perform her work and other activities is impaired by the condition.
Under these circumstances, we conclude that the trial court did not abuse its discretion by awarding a lump sum award of $150,000.00 which would include losses of wages and medical expenses.

PENALTIES AND ATTORNEY'S FEES
The plaintiff was awarded penalties and attorney's fees under the provisions of LSA-R.S. 22:658 (prior to the 1985 Amendment) which reads as follows:
"All insurers issuing any type of contract other than those specified in R.S. 22:655 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all *1045 reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
The evidence is clear that proof of loss was submitted to Hartford prior to the time suit was filed. There was never any dispute as to the liability of LaFleur. Hartford was provided with all medical information as it developed. Hartford was aware that LaFleur had only $10,000.00 liability coverage. Some negotiations for settlement were carried out between Hartford and the plaintiff but no actual unconditional tender of any sum was made by Hartford. Under these circumstances penalties and attorney's fees were due. McDill v. Utica Mutual Insurance Co., 475 So.2d 1085 (La.1985).
Hartford's contention that the attorney's fees of $7,500.00 was excessive is without merit. Counsel for the plaintiff has answered the appeal and asked that the attorney's fees be increased due to the appeal. We feel that the $7,500.00 award by the trial court was generous and was sufficient to cover the work involved in this appeal. Thus, this item will not be increased.
Plaintiff asked that the award be increased to include the medical expenses and loss of wages, amounting to $16,000.00. In the reasons for judgment, the trial court discusses these special damages and then said that a judgment would be rendered "in globo" for $150,000.00. A lump sum judgment of damages is normally presumed to award all items of damages claimed and proven. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983). We conclude that all damages claimed and proven are included in the award of $150,000.00.
Hartford contends that the award should be reduced by $10,000.00, the limit of liability coverage paid by the tortfeasor's insurer.
In the case of Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981), the court held as follows:
"The legislative aim evinced by the original uninsured motorist statute was to afford protection to insureds when they became the innocent victims of the negligence of uninsured motorists. Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580, 28 A.L.R.3d 573 (1968). In 1974 the statute was amended to provide that uninsured motorist coverage shall also apply as additional protection when the liability coverage on the tortfeasor's vehicle is less than the amount of damages suffered by an insured. La.R.S. 22:1406(D)(2)(b) (Acts 1974, No. 154). Accordingly, the object of the uninsured motorist statute, as amended, is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. See Niemann v. Travelers Ins. Co., supra [368 So.2d 1003 (La.1979)]; Whitten v. Empire Fire & Marine Ins. Co., 353 So.2d 1071 (La.App. 2d Cir.1977).
The uninsured motorist statute gives the insurer no greater subrogation rights than those provided by the Civil Code. The uninsured motorist statute provides that an insurer who makes payment under its uninsured motorist coverage is entitled to reimbursement to the extent of its payment from the proceeds of any settlement or judgment resulting from the exercise of its insured's rights against any person legally responsible for his bodily injury for which such payment is made. La.R.S. 22:1406(D)(4)...." (Emphasis added.)
*1046 The Bond case, and the uninsured motorist statute provisions discussed therein, provide for subrogation rights for the uninsured motorist carrier who makes payment under its uninsured motorist coverage. In the case at hand, Hartford has made no payment under its uninsured motorist coverage. Therefore, no subrogation rights in favor of Hartford would be available until payment was made. To reduce a judgment against Hartford would be recognizing Hartford's subrogation rights prematurely. Such a ruling would frustrate the legislative aim evidenced by the 1974 amendment to the uninsured motorist statute. Therefore, we deny Hartford's request for a reduction of judgment.
For these reasons, the judgment of the trial court is affirmed. Appellant-Hartford shall pay the costs of this appeal.
AFFIRMED.