|1PLOTKIN, Judge.
In this case, appellant, Commercial Union Insurance Company, called on us to decide a res nova issue of law in Louisiana: whether an original tortfeasor may seek indemnification from a medical care provider for that portion of the injured party’s damages that are directly attributable to the negligence of the medical care provider. Because we find that resolution of this issue is not necessary to decide this case, we pretermit answering it and affirm the district court’s decision that granted the medical care provider’s motion for summary judgment and dismissed the original tortfeasor’s third-party demand for indemnity, albeit for different reasons.

FACTS

On December 26, 1984, Dr. Thomas Futch, President of Manna International Manufacturing, Inc., received a telephone call from Manna’s Vice-President, Robert G. Williams. Williams’s car had stalled and he wanted Futch to help him. Futch drove to Williams’s location and, in the process of attaching a tow rope from his car to Williams’s car, a car driven by Thanh H. Vu (“Vu”) crossed the median and collided with Futch’s vehicle. As a result of the accident, Futch suffered a subdural hematoma, a fractured skull, ^permanent brain damage, several fractures, and multiple internal injuries necessitating surgery. Futch was transported to Pendleton Memorial Methodist Hospital (“Pendleton”) for the necessary treatment. During his stay at Pendleton from December 26, 1984, to January 7, 1985, Futch received several blood transfusions. The blood that Futch received was supplied to Pendleton by the Blood Center for Southeast Louisiana (“the Blood Center”).
*768 In 1985, Futch brought suit for his injuries. Named as defendants in that case were Vu, Orion Group, Inc. (Vu’s liability carrier), USAA (Williams’s liability carrier), Armed Forces Insurance Company (Williams’s excess liability carrier), and State Farm Insurance Company (Futeh’s uninsured motorist carrier). Futch compromised these claims and received the full limits under each policy.
In his 1985 suit, Futch also named Commercial Union Insurance Company (“CU”) as a defendant. CU had issued two liability policies to Manna, Futch’s employer. Futch alleged that the CU policies provided him with an additional layer of UM coverage. That contention has been and continues to be litigated by the parties. See Futch v. Commercial Union Insurance Co., 568 So.2d 588 (La.App. 4th Cir.1990), and Futch v. Commercial Union Insurance Co., 625 So.2d 1019 (La.1993). That issue is not raised in this appeal and we do not address it.
Sometime in 1989, Futch was diagnosed as suffering from human immunodeficiency virus, i.e., he was HIV-positive. Subsequently, Futch learned that he had contracted HIV from contaminated blood he had received during his stay at Pendleton. Futch thus filed a separate suit against the Blood Center for damages sustained as a result of the transmission of the HIV virus. In 1990, Futch compromised his claim against the Blood Center for an unspecified amount. Futch accordingly dismissed his suit against the Blood Center and executed a full release.
After learning that he was HIV-positive, on April 19,1989, Futch filed a Supplemental and Amending Petition in his original 1985 tort suit seeking additional damages resulting from his contracting HIV. In March of 1991, Futch filed a Second Amended and Supplemental Petition.
| oQn June 28, 1991, CU answered the Second Amended and Supplemental Petition and filed a Third-Party Demand against the Blood Center and its insurer. In that demand, CU averred:
Accordingly, and in the alternative, and only in the event that this Court might find defendant, Commercial Union Insurance Company, liable for any part of the demand made by plaintiffs, which liability is specifically denied, then, third party plaintiff, Commercial Union Insurance Company, is entitled to recover over [sic] reimbursement and/or indemnification from third party defendants, the Blood Center for Southeast Louisiana, and Agricultural Insurance Company, or, alternatively, contribution from and against said third party defendants for any amount third party plaintiff may be cast in judgment to plaintiffs, Thomas J. Futch and Winona Futch.
On March 24, 1994, the Blood Center filed a Motion for Summary Judgment in the trial court. In its motion, the Blood Center argued that Futch’s release of the Blood Center acted as a full and complete release of “any third party demands by Commercial Union based on indemnification and/or contribution.” On April 15, 1994, the trial court granted the Blood Center’s motion and entered summary judgment in the Blood Center’s favor, dismissing CU’s third-party demand. From this judgment, CU appeals to this court.

ISSUE

The only issue presented in this appeal is the propriety of the trial court’s granting of the Blood Center’s motion for summary judgment.

DISCUSSION

Because this is an appeal from the granting of a summary judgment, we apply the same standard that the trial court applied in weighing the motion initially. As we explained in Transworld Drilling Co. v. Texas General Resources, Inc., 604 So.2d 586 (La. App. 4th Cir.), writ denied, 608 So.2d 174 (La.1992):
Appellate courts apply a de novo standard of review when considering trial court judgments on motions for summary judgment, using the same criteria applied by trial court to determine whether summary judgment is appropriate. Thus, the appellate court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment |4as a matter of law.” La.C.C.P. art. 966(B). *769 It follows from the above standard that a motion for summary judgment may be granted only when the mover has proven both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; all allegations of the party opposing the motion are taken as true and all doubt must be resolved in his favor. In determining whether the movant has satisfied his burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, documents supporting the movant’s position are closely scrutinized, while the opposing documents are treated indulgently. Granting of the motion may not be based on the court’s belief that the party opposing the motion has little chance of succeeding at trial.
Id. at 589-90 -(citations omitted). In this appeal, there are no disputed issues of material fact. The only question we must resolve is one of law.
Louisiana law is clear that a tort-feasor takes his victim as he finds him and that he is responsible for all the natural and probable consequences of his act. Because there is an ease of association between the original injury and the subsequent negligent treatment, the duty to refrain from negligent automobile operation encompasses the risk that an accident victim’s medical treatment may cause him further damage. See Steptoe v. Lallie Kemp Hosp., 93-1359 (La. 3/21/94), 634 So.2d 331, 334, 336. As the Louisiana Supreme Court explained it,
a tortfeasor may be liable not only for the injuries he directly causes to the tort victim, but also for the tort victim’s additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treats the injuries directly caused by the tortfeasor. The original tortfeasor’s responsibility may extend to the risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking medical treatment.
Weber v. Charity Hosp. of Louisiana, 475 So.2d 1047, 1050 (La.1985). In other words, causation under Weber is continuous, creating an indivisible injury for which both tort-feasors are liable in solido. Steptoe, 634 So.2d at 334, 336. Thus, under Weber, Vu, the original tortfeasor, is liable to Futch for any damages Futch suffered as a result of contracting the HIV virus due to the Blood Center’s negligence. CU, as Manna’s alleged UM insurer, is solidarily liable with Vu for those same damages. See Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982); Rutkowski v. State, 550 So.2d 257 (La.App. 4th Cir.|19895). Therefore, CU, as Manna’s UM carrier, provides insurance coverage to accommodate the insufficiency of Vu’s insurance to compensate Futch adequately for his damages.
Another established principle of Louisiana law, one that the trial court relied on in granting the Blood Center’s motion, is that the release by the obligee-victim of one soli-dary obligor-tortfeasor effectively releases any and all claims for contribution against all other solidary obligors-tortfeasors. See Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3d Cir.1964). However, according to CU, this rule applies only to cases in which contribution is sought and that the rule does not apply to demands for indemnity; CU thus maintains that it is entitled to seek indemnification from the Blood Center.
 In reaching our conclusion today, we pretermit resolution of this issue. Although the argument CU advances must someday be confronted, this Court need not do so because of the peculiar position that CU occupies under the particular facts of this case. As noted above, Futch alleges that CU provides him with an additional layer of UM coverage. Because that issue is not in dis'pute in this appeal, we accept that contention as true. Accordingly, CU’s rights must be measured against the law governing UM insurers. In pertinent part, the relevant statute provides as follows:
In the event of payment to any person ... the insurer making such payment shall ... be entitled to the proceeds of any settlement ... resulting from the exercise of any rights of recovery of such person *770 against any person ... legally responsible for the bodily injury for which such payment is made....
La.R.S. 22:1406(D)(4). The Louisiana Supreme Court, in Bosch v. Cummings, 520 So.2d 721 (La.1988), specifically concluded that under this statute, the UM carrier has no rights against the original tortfeasor other than those it obtains from its insured after making payment under the UM policy, i.e., only through subrogation. Id. at 724. Moreover, when the UM carrier makes payment to the insured after the insured has already released the tortfeasor from liability pursuant to lawful compromise, the carrier has no rights against the tortfeasor. Id.
Subsequently, the supreme court has reaffirmed this position. For example, in Sharp v. Daigre, 555 So.2d 1361 (La.1990), the court stated as follows:
[ 6A UM carrier has no independent right to recover from a tortfeasor. After paying a UM claim, a carrier may be conventionally subrogated to the rights of its insured against the tortfeasor. However, the law favors compromise. Without a full release, an underinsured motorist and his liability carrier would never agree to compromise. Thus, the UM carrier’s interest in subro-gation must be subordinated to the recovery of damages by the injured person. If the insured releases the tortfeasor in the course of good faith compromise and settlement, the UM carrier has no recourse.
Id. at 1363 (emphasis added; citations omitted).
The court’s most recent pronouncement on the matter is Egros v. Pempton, 606 So.2d 780 (La.1992). In that case, Egros brought suit against Pempton (the original tortfea-sor), K & K Trucking (Pempton’s employer), Royal Insurance Company (K & K’s insurer), Orona Cabinet and Millwork Company (where Pempton was headed for his employer), Assurance Company of American (Oro-na’s insurer), and State Farm (Egros’ UM carrier). Egros compromised his claims against Royal, Pempton, and K & K prior to trial. The jury found in favor of Egros and the trial court entered judgment holding Orona, Assurance, and State Farm liable in solido for Egros’ damages.
On appeal, Orona and Assurance argued that State Farm was not entitled to subrogation from them because of their status as non-motorist tortfeasors. In a footnote, the court reaffirmed its holding in Bosch, stating that
State Farm was partially subrogated to its insured’s rights at the time State Farm made payment by depositing its policy limits into the court’s registry and by the insured’s withdrawal of the funds. Bosch, 520 So.2d at 723. The insured’s subsequent settlement of its remaining claim with Orona and Assurance does not affect the rights State Farm received at the time of its payment. This case does not present a situation where the insured settles with a tortfeasor before the UM insurer makes payment. There, the insured has no rights to which the UM insurer may become subrogated. See Bosch, 520 So.2d at 724; Pace v. Cage, 419 So.2d 443, 444 (La.1982); Serpas v. Ridley, 556 So.2d 134 (La.App. 5th Cir.1990).
Id. at 784 n. 6 (second emphasis added).
Addressing a later argument advanced by Orona and Assurance, the court addressed the question of the legal basis on which State Farm could seek recovery of the amounts it had paid to its insured. The court stated:
Orona and Assurance argue that the trial court erred in awarding State Farm the full amount of what it paid, asserting 17that the award constitutes impermissible indemnification since State Farm’s insured, Egros, was found to be 15% at fault. Alternatively, they argue that the principles of contribution should operate to reduce State Farm’s recovery. As found by the court of appeal, reliance on either of these concepts is misplaced. “Indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to one primarily responsible for the act or cause of the damage,” while “[cjontribution apportions the loss among joint tortfeasors and requires each to pay his virile share of the damages that result from the wrong.” State Farm’s right to reimbursement does not arise from indemnification, but from the conventional subrogation provided in *771 LSA-R.S. 22:1406(D)(4). The concept of contribution does not operate here because the reciprocity among obligors necessary to its operation is lacking.
Id. at 786 (emphasis added).
The highlighted language lays to rest the critical issue in this case: whether CU is entitled to seek contribution or indemnity at all or whether it is strictly limited to a right of subrogation. We conclude, based on the foregoing discussion, that CU is limited solely to the right of subrogation, which right does not come into existence until CU makes payment, if at all, to Futch. As explained by the Third Circuit, La.R.S. 22:1406 “provide[s] for subrogation rights for the uninsured motorist carrier who makes 'payment under its uninsured motorist coverage.” Aucoin v. Hartford Accident & Indem. Co., 499 So.2d 1042, 1046 (La.App. 3d Cir.1986). Absent such payment, CU has no subrogation rights. Id.
However, whatever rights CU might have obtained are clearly extinguished by Futch’s release of the Blood Center. See Bosch, 520 So.2d at 724; Henry v. Kipker, 525 So.2d 560, 561 (La.App. 3d Cir.1988). Accordingly, the trial court was correct in granting the Blood Center’s motion for summary judgment, thereby dismissing CU’s third-party demand.

WRIT APPLICATION

Subsequent to its lodging of this appeal, CU filed an application for supervisory writs. By order dated December 29, 1994, the writ application was ordered consolidated with this appeal. We thus turn to a consideration of the writ application.
After the trial court granted the Blood Center’s motion for summary judgment, CU filed a Motion in Limine seeking permission to introduce at trial evidence of the Blood Center’s fault in causing plaintiffs damages. CU argued that this evidence would allow the Igjury to apportion the Blood Center’s fault in causing plaintiffs injury and that CU would thus receive a proportionate reduction in its ultimate liability to plaintiff.
The trial court granted CU’s motion, ruling that it could present evidence of the Blood Center’s negligence. However, the trial court also held that CU’s recovery would be limited to a dollar-for-dollar credit up to the full amount of the settlement paid by the Blood Center, rather than a percentage of fault as provided for by La.Civ.Code arts. 1803 and 1804. CU filed a Motion for a New Trial as to this latter ruling, but the trial court denied the motion. This issue is the focal point of CU’s application for writs.
We deny the application for writs, finding no eiTor in the judgment of the trial court. Although Louisiana law expressly rejects the “dollar-for-dollar” approach, see La.C.C. art. 1803; Taylor v. United States Fid. & Guar. Ins. Co., 630 So.2d 237 (La.1993), we are again required to measure CU’s rights not against the general law of this state as codified in Civil Code articles 1803 and 1804, but against the specific law governing UM insurers. Under La.R.S. 22:1406(D)(4), a UM insurer is subrogated only “to the extent” of its payment to its insured. We interpret this language to mean that the UM carrier is entitled to only a dollar-for-dollar credit. Accordingly, the trial court was correct in its ruling on the Motion in Limine.

CONCLUSION

The trial court’s granting of summary judgment in the Blood Center’s favor is affirmed. CU’s application for supervisory writs is denied, there being no error in the trial court’s ruling that CU is entitled only to a dollar-for-dollar credit up to the full amount of the settlement paid by the Blood Center. The Blood Center’s demand for attorney’s fees and costs is denied.

AFFIRMED; WRIT APPLICATION DENIED.