682 So.2d 1014 (1996)
Margie COCO, Plaintiff-Appellee,
v.
SOUTHERN UNITED FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 96-135.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1996.
*1015 Vincent Ross Cicardo, Alexandria, for Margie Coco.
Leslie J. Schiff, Opelousas, for Southern United Fire Insurance Company.
Before THIBODEAUX, COOKS and AMY, JJ.
COOKS, Judge.
The defendant-appellant, Southern United Fire Insurance Company, appeals the trial *1016 court's finding that it did not have just cause for canceling a policy of insurance issued plaintiff, Margie Coco.

FACTS
In June of 1991, Margie Coco sought insurance for her 1983 Peterbilt tractor truck and 1978 Travis semi-trailer. On June 28, 1991, she visited Jim Hamilton and Sons Insurance Agency for assistance. She completed an insurance application required by Southern United Fire Insurance Company. Although Jim Hamilton was not an agent for Southern United, he contacted R.J. McKeever General Agency (one of the carrier's agents) to obtain a premium quote for collision coverage on the truck and trailer. Jodi Laborde, an employee of McKeever, quoted a price over the phone. Hamilton discussed the quote with Coco, who then tendered a down payment for the policy. Hamilton then contacted McKeever, and coverage was binded. The application was forwarded to McKeever.
Ben Hayes was listed on the application as an additional driver. Realizing this, Jodi Laborde requested a driver's check on Hayes and discovered he had been charged with an at fault accident. Laborde forwarded to Coco an invoice for additional premium which was paid, promptly.
The "follow-up" paperwork was forwarded to Southern United. Shortly after receipt of these documents, Richard Murray (a commercial auto programs manager for Southern United) determined Laborde's original premium quote was too low because of Coco's trailer's age. Southern United then billed McKeever an additional $98.00. Laborde notified Hamilton Insurance Agency of the additional surcharge by invoice mailed on August 13, 1991. Hamilton acknowledged receipt of the invoice but he could not recall whether the invoice was forwarded to Coco. Laborde again sent an invoice for the additional surcharge to Hamilton on August 27, 1991. On August 29, 1991, Hamilton mailed the second invoice to Coco along with a note explaining the error. The additional surcharge was not paid. Laborde then requested that Southern United cancel the policy issued to Coco for non-payment of premium. In response, Southern United mailed a letter of cancellation to Coco and Hamilton on October 3, 1991. After receiving the notice of cancellation, Hamilton mailed it to Coco.
On October 17, 1991, Ben Hayes wrecked the truck and trailer in a one vehicle accident. Margie Coco filed a claim for collision damages with Southern United. The carrier denied the claim indicating the policy was cancelled prior to the accident. Coco filed suit contending Southern United wrongfully rejected her claim.

LOWER COURT PROCEEDINGS
Responding to Coco's suit, Southern United filed a Motion for Summary Judgment asserting the policy was canceled prior to the accident. The trial court denied the motion holding there existed genuine issues of material facts still in dispute. Following trial, the court rendered judgment in Coco's favor finding Southern United's policy was not properly canceled. The judgment further ordered Southern United to pay Coco $40,000.00 in general damages, and $6,875.00 in attorney fees. This appeal by Southern United followed. The insurer assigns the following errors for review:
1. The trial court erred as a matter of law in holding that Southern United could not cancel the policy for non-payment of an additional surcharge discovered during the underwriting process within ninety days of issuance of the policy.
2. The trial court erred in finding plaintiff proved the quantum of property damage and casting Southern United for damages of $40,000.00.
3. The trial court erred in awarding attorney fees.

ANALYSIS

A. Coverage
On June 28, 1991, the date the policy in dispute was issued, La.R.S. 22:1463 read[1]:

*1017 A. No insurer shall be entitled to an additional premium for a commercial property, casualty or liability insurance policy which has been in effect for more than ninety days or for a noncommercial property, casualty, or liability insurance policy which has been in effect for more than sixty days and there has been no material change in the circumstances of the insured from those stated by the insured in his application for the policy. (Emphasis added). The insured shall not be responsible for payment of such additional premium, shall not be penalized for nonpayment of that additional premium, and his policy shall not be canceled for failure to pay such additional premium.
B. In this Section, "material change" shall mean any change in any matter which, if stated on the application, would have resulted in a different initial premium for the policy.
Finding "there were no material changes in the circumstances of the insured" sufficient to justify the additional premium charged, the trial court found the insurer's subsequent cancellation of Coco's policy was ineffective.
Southern United argues it was entitled to the additional premium because the request was made within the 90 day period set forth in the statute. The carrier points out the invoices for additional premium were mailed on August 13, 1991 and August 27, 1991. At oral argument the insured's counsel conceded the absence of material change rationale first advanced by the trial judge in finding coverage was clear legal error. The referenced statute provides when a commercial policy is issued the carrier may request additional premium within 90 days without any "material change in the circumstances of the insured." The "material change" requirement, thus, is necessary only after exhaustion of the 90 day delay. In this case the parties do not dispute the additional premium notice was forwarded during the 90 day window.
Although Coco concedes the timeliness of the notice, she nonetheless argues the cancellation of the entire policy affecting both the truck and trailer was not effective because: First, the premiums for the truck's coverage were paid in full; and second, all premiums, in fact due, were paid to the carrier by its agent, R.J. McKeever General Agency prior to cancellation. At the time Coco's policy was canceled the carrier had in its possession unearned premium equaling $1,873.00. The total premium charged by Southern United for coverage of the truck and trailer was $2,695.00.[2]
Although the trial judge first hinged his ruling on the absence of a "material change in the circumstances of the insured," he ultimately concluded Jodi Laborde's failure to request additional premium because of the trailer's age was a mistake imputable to Southern United. As a result, he reasoned, fairness and equity required a ruling favoring coverage in this case.
Jodi Laborde was employed by R.J. McKeever General Agency and her assigned duties included:
"[G]iving rate quotes over the telephone and reviewing the applications when they arrive in the mail. Additionally, she could bind coverage thereby providing an applicant temporary coverage until the application was received, reviewed and a policy issued. Her procedure called for her to review the application and if there were any corrections to the original quote to charge an additional premium."
After giving the initial rate quote, Jodi Laborde received Coco's completed application. Her job, as an underwriter, included determining whether any adjustment to the premium quoted Coco was required by Southern United's "Rating Guidelines and Rules." Laborde admitted she was familiar with the guidelines. Richard Murray, Southern United's home office manager, testified he "depend[ed] on Jodi because she [knew] what she was doing." As noted, Jodi adjusted the initial quote to account for Hayes' at fault accident. Although the application form reflected the age of Coco's trailer, Laborde did not adjust the premium to add a surcharge because of its age. At trial, she did not offer *1018 any reason to explain why this oversight occurred. When Coco received the adjusted premium notice from Laborde's office, she promptly paid the difference. The application and full payment was forwarded to Southern United. Richard Murray also reviewed Coco's application when it arrived at the home office; and, he testified based on the company's "Rating Guidelines and Rules" Coco had not been charged an additional $85.00 surcharge because her trailer's age exceeded 10 years. A second premium adjustment notice was mailed first to McKeever General Agency which paid the amount requested and forwarded the notice to Hamilton.[3] Hamilton's agent could not recall specifically whether this notice was sent to Coco. Eventually, a notice of cancellation was forwarded to Coco indicating Southern United intended to cancel the policy covering the truck and trailer on October 14, 1991 for non-payment of additional premium. The notice was prompted by Jodi Laborde's request to Southern United that it cancel Coco's policy for non-payment of premium.
Southern United acknowledges, in supplemental brief, that "R.J. McKeever was a general agent for Southern United .... [and both] are one unit for the purpose of payment by the insured ..." La.R.S. 22:1161 defines an insurance agent as "an individual who is [a]uthorized in writing by any insurer lawfully authorized to transact business in this state, to act as its representative...." The acts of one procuring insurance as agent of the insurer are imputable to the insurer. Nastasi v. Fejka, 556 So.2d 1307 (La.App. 5 Cir.1990); Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3 Cir.1972), affirmed on other grounds, 281 So.2d 728 (La.1973). Thus, an insurance agent's acts, mistakes, errors, negligence, representations, or omissions are those of the insurance company. This bedrock agency principle is not only codified but long recognized in Louisiana's jurisprudence. La.Civ. Code arts. 2985 and 3021; Texoma Broadcasters, Inc. v. Hospital Corp. of America, 542 So.2d 780 (La.App. 3 Cir.). An agent has authority to contractually bind the insurer and such contracts "may be dissolved only through the consent of the parties or on grounds provided by law." La.Civ.Code art. 1983. All contracts must be performed in good faith La.Civ.Code art. 1983. In New Jersey Life Ins. Co. v. Henri Petetin, Inc., 311 So.2d 454, 461 (La.1975), the Louisiana Supreme Court recognized:
... that once a party to a contract has given his consent and there is negligence attributable only to that party in the confection of the instrument which evidences the contract, he cannot require the courts to vitiate the contract for that would be an exercise of bad faith by the obligor.... That party cannot take advantage of such errors to the detriment of the other consensual party who wishes to enforce the contract.
Southern United does not dispute that its agent, McKeever through the acts of its employee Laborde, mistakingly failed to adjust Coco's premium to account for the trailer's age. Laborde's omission, without any offered explanation, constituted clear negligence. Her negligence is imputable to Southern United. The insurer, nevertheless, insists that La.R.S. 22:1464 allows it to demand from Coco additional premium within 90 days from the effective date of the policy without any material change in the policy. Southern United argues in enacting this provision "[t]he legislature recognized that the insurer needs sufficient time to receive and review the application, and correct any errors regarding premiums which may occur" within the statutory period. The statute, argues the insurer, "recognizes the procedures in obtaining insurance and the possibilities of human error in the application and underwriting process." Southern United suggests without this statutory window to correct errors, "no insurer would bind a policy without first reviewing the application" and "[p]ersons searching for insurance would not be insured until such time after the insurer had opportunity to review the application and premium initially quoted." We are not persuaded to accept, sight unseen, the *1019 parade of horrors the carrier encourages us to imagine. Neither are we convinced the legislature intended to allow an insurer to cancel a contract of insurance unilaterally for non-payment of premium when an insured paid the full premium requested after its underwriting agent had opportunity to completely review the application and discover all adjustments warranted. La.R.S. 22:1464 does not expressly excuse the insurer from responsibility for any "human error," albeit the result of negligence, as long as it demands the additional premium within 90 days from the policy's effective date.
Well established in our jurisprudence is the principle of construction that insurance contracts require interpretations in favor of coverage by those reasonably entitled to it. Mahaffey v. State Farm Mutual Automobile, Ins. Co., 95-641 (La.App. 3 Cir. 2/28/96), 679 So.2d 129. Further, "an insurance contract is an agreement between the parties and should be interpreted by using ordinary policy principles." Smith v. Matthews, 611 So.2d 1377 (La.1993); Breland v. Schilling, 550 So.2d 609 (La.1989); Dunn v. Potomac Ins. Co. Of Illinois, 94-2202 (La.App. 1 Cir. 6/23/95), 657 So.2d 660;. A "[c]ontract of insurance is not synonymous with the policy of insurance." New Jersey Life Ins. Co., v. Henri Petetin, Inc., 311 So.2d 454 (La.1975). Actual or physical delivery of a policy is not necessary to effectuate the contract of insurance if it is otherwise completed.
We agree Southern United's initial agreement to bind insurance coverage for Coco did not prevent it from canceling such coverage or from adjusting the quoted premium to account for rate increases not discovered immediately by it or the general agent within the statutory period, provided the insured received proper notice. The agreement to bind did not constitute a fully perfected contract. We also find convincing Southern United's argument that the legislature intended to allow it a reasonable period to correct errors, through the underwriting process, in the initial rate quote given without opportunity first to fully investigate the information in the application or the insured. But our accord ends here. The legislature in enacting La.R.S. 22:1464 did not repeal the general rules of construction applicable to all contracts or excluded by special legislation insurance contracts from the effects of these provisions.
Coco paid promptly the full premium requested and accepted by Southern United, through its underwriting agent, Laborde. Laborde had opportunity to investigate the insured and the information in the application. The age of the trailer was revealed to Southern United when the binder was requested and this information was supplied in the actual application forwarded to its agent. When the agent adjusted Coco's premium and accepted additional payment, the contract of insurance was perfected in good faith by the insured. Southern United, by the acts of its agent, consented to the contract and promised to deliver the policy for the price paid. We cannot allow Southern United to vitiate the contract of insurance because of an error entirely attributable to its agent which is legally imputable to it. This finding does not frustrate the purpose or spirit of La.R.S. 22:1464.
The rate adjustment for the trailer's age, overlooked by Laborde, was small in comparison to the total premium charged by the insurer. McKeever actually paid the surcharge its employee neglected to charge Coco. When Laborde requested that Southern United cancel Coco's policy, the premium was paid in full on the truck and trailer. To allow Laborde to cover her mistake as Southern United's underwriting agent without consequence to the detriment of the insured also offends Louisiana's strong public policy favoring construction of insurance contract to allow coverage when neither statute nor contract expressly dictate a contrary result.

B. Property Damage
Southern United argues the trial court erred in awarding Coco the full coverage declared in the policy without requiring her to establish the actual value of the truck and trailer at the time of the accident. The declarations sheets in the record reflect the truck was insured for $30,000 and the trailer for $10,000. Following the accident, James M. Jacobs, a body repairman and owner of a truck body shop, estimated the repair cost *1020 for the truck and trailer at Coco's behest. He estimated the truck would cost $37,083.44, without tax, to repair. Jacobs did not perform an estimate on the trailer because in his opinion it was beyond repair. However, Coco did not offer any evidence to show the actual value of the truck and trailer prior to the mishap. Further, the record does not contain evidence of the truck and trailer salvage value, if any. In Holt v. Rapides Parish Police Jury, 574 So.2d 525, 530 (La.App. 3 Cir.1991) this court stated as follows:
[I]t is well-settled law that when an automobile is a total loss, the owner is entitled to recover the market value of the vehicle before the accident less its salvage value, if any. Proof of salvage value is an absolute prerequisite to a recovery for the total loss of a vehicle. (citations omitted).
Without this essential evidence, we must remand the case to the trial court for a determination of the market value of the truck and trailer on the date of the accident and salvage value thereafter.

C. Attorney Fees
The trial court found Southern United was arbitrary and capricious in canceling the policy and awarded attorney's fees to Coco. As discussed, Southern United's underwriting agent's mistake was imputable to it. We cannot say the trial court's award was clearly wrong or abusive.

DECREE
The trial court's judgment is affirmed, except that portion awarding Coco $40,000.00 and the case is remanded for submission of further evidence by the parties consistent with this opinion and a ruling by the trial court on the appropriate award. All costs of this appeal are assessed against defendant-appellant, Southern United Fire Insurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
AMY, J., dissents and assigns reasons.
AMY, Judge, dissenting.
I respectfully dissent from the majority's affirmation of the trial court's judgment that there was an insurance policy in effect at the time of Hayes' accident. The trial court found that Laborde should have seen the age of Coco's trailer when she processed Coco's application. The trial court concluded that Laborde's negligence is imputed to Southern. At that point, the trial court stated that "it would just not be fair and equitable under the circumstances of this case to punish Plaintiff for a mistake made by Southern United." Therefore, I agree with the majority that the trial court based the decision on equity. However, in my view, the trial court erred by resorting to equitable principles in deciding this case.
In Louisiana "[t]he sources of law are legislation and custom." La.Civ.Code art. 1. When there is no particular rule derived from legislation or custom, the court may resort to equity and justice. La.Civ.Code art. 4. However, in the present case, there is legislation that is directly applicable which proscribes the court's equitable jurisdiction. La.R.S. 22:1463, which was in effect when Coco purchased the insurance (now redesignated as 22:1464), stated in part that:
No insurer shall be entitled to an additional premium for a commercial property, casualty, or liability insurance policy which has been in effect for more than ninety days or for a noncommercial property, casualty, or liability insurance policy which has been in effect for more than sixty days and there has been no material change in the circumstances of the insured from those stated by the insured in his application for the policy.
An insurance company can demand an additional premium on a commercial policy within 90 days after the policy has been in effect. This statute allows the insurer to have sufficient time to receive and review the insured's application, and correct any errors that may have been made. In the present case, Coco purchased a commercial insurance policy on June 28, 1991. On August 13 and August 27, Southern made requests for the additional premium due on account of the age of the trailer. Within 90 days from the issuance of the policy, demand was made on Coco on August 29. The additional premium was not paid prior to cancellation. Therefore, the insurer acted squarely within the limits allowed by the legislature. In my opinion, La.R.S. 22:1464 is clear and unambiguous and does not lead to absurd consequences. *1021 Accordingly, the statute must be applied as written. La.Civ.Code art. 9.
There is an additional issue. The majority, in finding an insurance policy was in effect at the time of the accident, points out and discusses the general principles of law regarding the interpretation of insurance contracts. They propose that because of these general principles, the trial court was correct. On the contrary, it has long been established under the jurisprudence of our state that, a specific rule of law takes precedence over a more general rule of law. See Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); Futch v. Commercial Union Ins. Co., 94-2040 (La.App. 4 Cir. 4/13/95); 654 So.2d 766; Delahoussaye v. Thibodeaux, 498 So.2d 1137 (La.App. 3 Cir.1986), writ denied, 501 So.2d 236 (La.1987). In State v. One 1990 GMC Sierra Classic Truck, 94-0639 (La.App. 4 Cir. 11/30/94); 646 So.2d 492, 496, the fourth circuit observed that "[w]here two laws conflict, the law more specifically directed to the matter at issue must prevail over the general law." Therefore, since La.R.S. 22:1464 specifically covers this particular issue, it must take precedence over the more general rules cited in the majority's opinion.
In sum, under the law as enacted by the legislature, Southern was able to cancel Coco's insurance policy because of non-payment. Accordingly, I would reverse the trial court's judgment, and hold that the policy was properly canceled.
NOTES
[1] This section added by Acts 1988, No. 359, § 1 as R.S. 22:1463, was redesignated as R.S. 22:1464 pursuant to the statutory revision authority of the Louisiana State Law Institute in 1993.
[2] This figure includes the amounts charged for liability, property, and theft coverage and all subsequent adjustments. The premium charged for the truck's coverage was $1,782.00.
[3] McKeever General Agency, through bookkeeping procedures and practices, paid Southern United the undercharge.